[Sac. No. 2119. In Bank.—April 29, 1915.]

LEWIS F. BYINGTON et al., Respondents, v. SACRA-MENTO VALLEY WEST SIDE CANAL COMPANY et al., Appellants.

IRRIGATION DISTRICT — ILLEGAL ORGANIZATION — TRANSFER OF PROPERTIES.—Where an irrigation district makes an appropriation of water and, although judicially declared to be illegally organized, in good faith leases all of its property and uncompleted works to a person who assigns them to a public service corporation in accordance with the Irrigation District Act of 1901, it has sufficient vitality as a *de facto* district to execute such lease, and the acts of the assignee are deemed to be a continuation of the original dedication and the water-rights acquired under such lease are deemed to be a part of the original system, and the lands within the boundaries of the original irrigation district constitute the primary territory to which the public use extends, and such lands must on demand be served with water before it can be taken to outside lands.

ID.—ESTOPPEL OF LESSEE.—The assignee of the lease under such circumstances is estopped to deny the title of the lessor under which it took possession of the subject-matter of the lease.

ID.—QUASI-PUBLIC CORPORATION—POWER TO LEASE ALL OF ITS PROPERTY A quasi-public corporation engaged in supplying water for public use, may under legislative sanction lease all of its property and franchises, subject to the right of all persons to whom the water is appropriated or dedicated, to have the supply continued by the lessee. Such a lease by an irrigation district, made under the enabling act of 1901, should have read into it the provisions of the statute, and thus the burden of continuing the supply would be imposed on the lessee.

ID.—ENABLING ACT OF 1901—CONSTITUTIONAL LAW—MUNICIPAL FUNCTIONS.—The act of 1901, (Stats. 1901, p. 815), permitting the directors of an irrigation district to lease its system of canals and works, is not in conflict with section 13 of article XI of the constitution, prohibiting the delegation of municipal functions. The delivery of water dedicated to public use is not necessarily a municipal function.

ID.—EQUITABLE REMEDY TO PROTECT RIGHT TO WATER.—Owners of land within the boundaries of the irrigation district may maintain an action in equity against the assignee of such lease to protect their rights to the waters of the system, before the water has been conducted to the vicinity of their land, without waiting until the extension of the canals and then enforcing their rights by *mandamus.*

ID.—POWER TO GRANT PREFERENTIAL RIGHTS.—Such a public service corporation cannot grant any preferential right in the water appropriated by it for public distribution to any consumer of such water.

ID.—FORM OF RELIEF GRANTED.—When the action is not based upon the failure of the defendant to extend the irrigation system in accordance with the notices of appropriation but to prevent the company from subverting water devoted to a public use to private and extra-territorial use, and the water was taken in pursuance of the authority of Congress to take the same rather than under the notices of appropriation, the relief granted will not be limited to a forfeiture of the rights thus obtained by appropriation, but a decree may be entered preventing the defendants as successors in interest of the original irrigation district, from creating adverse claims to the water which would cause embarrassment to the persons interested therein when such successor corporation should extend the system to a point convenient for serving water to the lands of the plaintiffs.

APPEAL from a judgment of the Superior Court of Colusa County. N. D. Arnot, Judge presiding.

The facts are stated in the opinion of the court.

Frank Freeman, Morrison, Dunne & Brobeck, and R. L. McWilliams, for Appellants.

Stanley Moore, Lewis F. Byington, Ernest Weyand, and A. A. Moore, for Respondents.

MELVIN, J.—This is an appeal from the judgment by all of the defendants except those sued by fictitious names.

Plaintiffs are the owners of agricultural lands located within the boundaries of Central Irrigation District, and, as they assert in their complaint, their property is susceptible of irrigation from the common source and system of irrigation controlled by certain of the defendants, particularly Sacramento Valley West Side Canal Company and Sacramento Valley Irrigation Company, although they admit that it will take more than a year to extend the canal of the former corporation from Maxwell, its present terminus, to and

beyond the town of Williams, so that the water will be brought into proximity to their lands. Williams is about ten miles south of Maxwell.

After trial the court made elaborate findings and decreed that the waters taken by defendants from the Sacramento River were and are appropriated to a public use; that the area for the benefit of which said waters are appropriated is the land within Central Irrigation District; that the farms of plaintiffs are within that area; that plaintiffs own an estate and interest in said appropriation and that their lands are entitled to water for irrigation either at a rate voluntarily agreed upon by the parties or fixed by the board of supervisors of Colusa County; that defendants are not entitled to convey water outside of the place of intended use and area for which said water was appropriated and (to quote from the decree itself) : ''They are not entitled to irrigate lands outside said area, or furnish water for the irrigation thereof, until the requirements for the irrigation of the lands of plaintiffs have been fully met and provided for, and the defendants, and neither of them, are entitled to sell water-rights upon lands inside or outside said area or place of intended use, until plaintiffs' requirements are fully met and provided for.''

The findings contain a history of the attempt to furnish a system of irrigation for the west side of the Sacramento Valley beginning with the formation of the Central Irrigation District in 1887. The district contains one hundred and fifty-six thousand acres of land. The towns of Williams and Maxwell and the surrounding territory, including the holdings of plaintiffs, are within this acreage. The purpose and plan of the district was to irrigate the lands therein by water to be taken from the Sacramento River and conveyed through a canal to be something more than sixty-one miles in length. In 1890 and the two following years the canal was dug for a distance of about forty miles, the section excavated commencing near the point of intended diversion on the Sacramento River in Glenn County, about a quarter of a mile from the intersection of the river by the boundary line between Glenn and Tehama counties, and running thence southerly through the lands of the district to Maxwell. No further excavation was done until after January, 1903. In December, 1902, the board of directors of the Central Irrigation District, claiming to be proceeding in accordance with the Irriga-

tion District Act of 1901 (Stats. 1901, p. 815) amendatory of the act of 1897 (Stats. 1897, p. 254) decided to lease the properties of the district; and in the early part of 1903 a lease was executed between the Central Irrigation District and Willard M. Sheldon, by the terms of which the lessee agreed to complete the canal for its entire length, together with all distributing canals, and to acquire all necessary water-rights, and to sell and distribute water to the owners of all of the lands in said district for the irrigation of said lands. The term of the lease was fifty years, and the rental was fifty dollars per year. Sheldon assigned this lease to Central Canal & Irrigation Company in February, 1903, and in the following years to and including 1908, considerable work was done by that corporation, including the extension of the canal to the Sacramento River. In 1906, Central Canal & Irrigation Company obtained from Congress the right to divert and appropriate nine hundred cubic feet of water per second from the Sacramento River at the point of intake of the Central Canal for the irrigation of all the lands of Central Irrigation District. The court found also that the right to divert and appropriate this water from a navigable stream was obtained by the corporation "in pursuance with the covenants and conditions" of the lease "and for the purpose of enabling it to distribute, sell and supply water to all the lands within said district." There was also a finding that: "Said right was granted by Congress for the public purpose and use of selling and distributing water for irrigating purposes to all the landowners and lands within the district." In 1909, Sacramento Valley Irrigation Company obtained an assignment of the lease, and in July of that year transferred it to Sacramento Valley West Side Canal Company, a subsidiary corporation, a majority of the stock of which is owned by the irrigation company.

The lease is set out in the findings and the court finds that under it the West Side Company is obligated to sell water for the lands of plaintiffs; that defendants are estopped from denying the *de facto* existence of the Central Irrigation District and that they are estopped also from denying the operative portions of the lease. It is also found that the two allied corporations are successors of the original appropriation of water for the Central Irrigation District; that said original appropriation was for a public use; that the Central Canal is

dedicated to a public use and that the lease was intended to carry out the public use of selling and distributing water for irrigation to the lands in Central Irrigation District.

The findings further recite that Sacramento Valley Irrigation Company owns more than eighty thousand acres of land in Central Irrigation District; that the corporation entertains the purpose of buying substantially all of the land in the district and reselling it with "water-rights" exclusively attached thereto. It is found that in pursuance of this plan the two companies have agreed and announced that the West Side Company will not sell water for irrigation of any lands within the district not now owned or hereafter acquired by the Irrigation Company, except that the West Side Company further states it will not irrigate any other lands whatsoever unless a water-right is purchased for such tracts at a rate to be fixed by it at not less than seventy-five dollars per acre; that the West Side Company also asserts that it intends to make use of all the water available from the Sacramento River for the irrigation of the land owned by the Sacramento Valley Irrigation Company, or to be acquired by that corporation within or outside of the Central Irrigation District. And it is also found that: "the Sacramento Valley West Side Canal Company is now delivering to the purchasers of lands from the Sacramento Valley Irrigation Company alleged water-rights to the entire exclusion of the plaintiffs and which water-rights purport to vest in the purchasers of said lands a right to the proportion of all of said water to be derived from said river measured and divided only by the rights of other purchasers of land from said Sacramento Valley Irrigation Company and purchasers of water-rights, if any, from said Sacramento Valley West Side Canal Company, at not less than $75 per acre."

Appellants insist that plaintiffs have no estate in the water by deraignment through the lease and that they are therefore entitled to no decree quieting their title or providing injunctive relief. In this behalf they assert that the irrigation district had no existence, either *de jure* or *de facto* when the lease was executed in 1903. Respondents admit this claim to be correct so far as the formal organization of the district was concerned, because it was held by this court (*In re Central Irrigation District,* 117 Cal. 382, [49 Pac. 354]), that the proceedings by which it was sought to organize the district

were illegal and void; but respondents say that the district had a very substantial *de facto* existence. Appellants call our attention to the fact that after the decision of this court cited above, the matter went back to the superior court for hearing, and that a judgment, in which the Central District and its officers acquiesced, was entered, pronouncing all proceedings in the formation of the said district void. This was in the year before the lease to Sheldon was executed, and it is argued that having acquiesced, by failure to appeal, in the judgment that its organization was a nullity, the district might not later assume any functions of an irrigation district, and that in the execution of the lease the district was acting without color of law. Consequently, say appellants, the lessor was not a corporation *de facto*. The appellants also are of the opinion that the alleged officers of the district being bound by a judgment *in rem* might not presume to act in an official capacity in making the lease, and that therefore all of their acts in the premises were void. In support of this view they cite *People* v. *Linda Vista Irrigation District,* 128 Cal 482, [61 Pac. 86]. That case did not determine so much as appellants attribute to it. This court there held that a decree under the proceeding prescribed by the confirmatory act would be conclusive evidence against an attempt by the state to relitigate the question of the regular formation of the district by a proceeding in *quo warranto.* A judgment in such a proceeding, declaring that the district was not legally organized, may be conclusive of that question and dissolve it as a *de jure* corporation, but it does not preclude the subsequent existence of a *de facto* district assuming to exercise the same powers. Persons may thereafter transact the ordinary business theretofore done by the supposed district, acting in the same manner and under the same name, even after a decree, final in its force, declaring the previous proceedings for the formation of a district to have been irregular and of no legal effect, and if they do so, the organization so carried on may have the *status* of a *de facto* corporation. This was decided in *Haese* v. *Heitzeg,* 159 Cal. 574, [114 Pac. 816], where it was held that, notwithstanding a decree in confirmation proceedings under the Irrigation Act, declaring a district illegally organized and its bonds void, if persons assuming to be the officers of such district continue in good faith to close up its affairs, they would thereby constitute themselves

a *de facto* irrigation district for that purpose. This *de facto* Central Irrigation District, constituted in a similar manner, was sufficiently vital to transfer and deliver to Sheldon property worth many thousands of dollars, which had been acquired for the very public use of which the plaintiffs would have been beneficiaries if the district had been legally organized in the first place, and this property has since been used by the Sacramento West Side Canal Company, as Sheldon's successor, in the development of the irrigation system in the benefits of which the plaintiffs are here claiming the right to participate. Under these circumstances, we think the acts of said company should be held to be a continuance of the original dedication, that the water-rights acquired in pursuance of the lease of the so-called district to Sheldon should be deemed a part of the system, that the lands within the bounds of the original Central Irrigation District constitute the primary territory to which the original public use extends and continues, and that, when demanded, such lands must be served with water from the system, before it can lawfully be taken for use upon outside lands.

Occupying, as it does, the relation of tenant under the assigned lease, the Sacramento Valley West Side Canal Company is estopped from denying the validity of the title under which it took possession of the demised premises. (Jones on Landlord and Tenant, sec. 682.) While admitting the rule that ordinarily a tenant is estopped from denying the title of the lessor, the appellants insist that they are not bound by the contract of lease and that plaintiffs may enjoy no rights thereunder because the act of the legislature authorizing such leases was unconstitutional and the lease was *ultra vires* as against public policy and void. While it is true that a *quasi* public corporation—one, for example, engaged in supplying water for a public use—may not, without legislative sanction, transfer all of its property to another (*Visalia Gas & Electric Light Co.* v. *Sims*, 104 Cal. 328, [43 Am. St. Rep. 105, 37 Pac. 1042]; *Central Transportation Co.* v. *Pullman P. P. Co.*, 139 U. S. 59, [35 L. Ed. 55, 11 Sup. Ct. Rep. 478]; *Anglo American Land Co.* v. *Lombard*, 132 Fed. 737, [68 C. C. A. 89], under legislative authority such a corporation may transfer its property and its franchises, subject to the right of all persons to whose use the water is appropriated or dedicated, to have the supply continued by the transferee or lessee.

(*South Pasadena* v. *Pasadena Land & Water Co.*, 152 Cal.
587, [93 Pac. 490].)  We see no reason why the enabling
statute of 1901, permitting the board of directors of an irriga-
tion district to lease the system of canals and works, should
be held unconstitutional.  The act provides that "such lease
shall in no way interfere with any rights that may have been
established by law at the time such lease was made."  Mani-
festly any lease would carry that burden to the lessee, for the
statute would be read into the lease.  The enabling act does
not conflict with section 13 of article XI of the constitution,
because it does not purport to delegate to any private corpo-
ration any municipal function.  The right to the use of water
appropriated to the public may be enforced by one of the
community or class entitled to its enjoyment, regardless of
the title.  The delivery of water dedicated to public use is
not necessarily a municipal function.  Such use may be ad-
ministered by a natural person, or by a private corporation.
Being, therefore, the successor of the Irrigation District and
being a public service corporation, the Sacramento Valley
West Side Canal Company is bound by the terms of the
original lease and may not question the power of the lessor
to enter into that agreement.  (*Fellows* v. *Los Angeles*, 151
Cal. 64, [90 Pac. 137].)

Part of the consideration for the lease was the promise of
the lessee to complete the canal.  Plaintiffs assert that they are
entitled to protect themselves by resort to a court of equity
from the dissipation of their rights before the water shall be
conducted to a place near their property; from the sale of
water outside the district for which it was appropriated; and
from the creation of preferential classes who will dispute
with them their title to the water which they have as residents
of the district.  Appellants, on the contrary, take the position
that the owners of land near Williams must wait until the
extension of the canal and then enforce their rights, if any
they have, by *mandamus*.  They cite in support of that con-
tention such cases as *Cozzens* v. *North Fork Ditch Co.*, 2 Cal.
App. 405, [84 Pac. 342]; *South Pasadena* v. *Pasadena Land
& Water Co.*, 152 Cal. 587, [93 Pac. 490]; and *Orcutt* v.
*Pasadena Land & Water Co.*, 152 Cal. 600, [93 Pac. 497].
Unquestionably in those cases it was held that a right to take
water may be exercised only by one whose lands are within
the flow of the ditches of the person or corporation bound

to supply it, and that *mandamus* is the proper method of enforcing the demand of those who have been denied their rights. But a court of equity may entertain an action to quiet title to water not immediately available and may grant appropriate relief. (Code Civ. Proc., sec. 738; Wiel on Water-rights, (3d ed.), sec. 654; *Katz* v. *Walkinshaw,* 141 Cal. 120, [99 Am. St. Rep. 35, 64 L. R. A. 236, 70 Pac. 663, 74 Pac. 766].) In the case of *Inyo Consolidated Water Co.* v. *Jess,* 161 Cal. 520, [119 Pac. 934], it is declared that one may protect his "incipient right" to water against hostile invasions and claims of others. And the same doctrine is announced in the later case of *Merritt* v. *City of Los Angeles,* 162 Cal. 50, [120 Pac. 1064]. So here the plaintiffs may safeguard their rights, although no water has, as yet, been brought into close proximity to their lands.

Appellants try to bring themselves within the rules and principles declared in *Thayer* v. *California Development Co.,* 164 Cal. 125, [128 Pac. 21]. In that case it was held that the water-right which a person gains by diversion from a stream for a beneficial use is a private right and the water may not be demanded by the general public on payment of the legal fees until some act of dedication establishes the public use. Under the facts of that case it was held that the California Development Company had not dedicated the water in its irrigating system to a public use and that it might select and sell water to a class of consumers to the exclusion of others not belonging to that class. The facts in this case are altogether different. The properties of the district leased to Sheldon had been held by a *quasi* public corporation for public use. Sheldon took them subject to that use. He assigned to the Central Canal & Irrigation Company, a public service corporation (admittedly such because it is so alleged in the complaint and not denied in the answer). The Sacramento Valley West Side Canal Company (bound by similar admission) is a public service corporation. Both companies by their articles of incorporation are permitted to engage in the business of purveying water. At the trial it was proven that the Sacramento Valley West Side Canal Company in developing the system of irrigation canals and ditches had prosecuted suits in eminent domain. This shows that it was a public service corporation. (*Thayer* v. *California Development* Co., 164 Cal. 117, 138, [128 Pac. 21]; *State ex*

*rel. Wood* v. *Consumers Gas Trust Co.,* 157 Ind. 345, [55 L. R. A. 245, 61 N. E. 674] ; Morawetz on Private Corporations, (2d ed.), sec. 1129.) Such a company may not confer such preferential rights as the Sacramento Valley West Side Canal Company and the Sacramento Valley Irrigation Company are seeking to bestow upon purchasers of land from the latter, because, as was said in *Leavitt* v. *Lassen Irrigation* Co., 157 Cal. 89, [29 L. R. A. (N. S.) 213, 106 Pac. 404] :''The fundamental and all important proposition, then, is this, that a public service water company which is appropriating water under the constitution of 1879, for purposes of rental, distribution and sale, cannot confer upon a consumer any preferential right to the use of any part of its water.''

Appellants introduced in evidence several notices of appropriation. It is argued that any violation of the promised development outlined in these notices and any failure to comply with the rules of diligent construction merely entails upon the failing appropriators a forfeiture of their right as against a subsequent claimant (Civ. Code, sec. 1419), and that the decree of the superior court imposing a much greater penalty was beyond its power. But the plaintiffs were not by their bill asking for relief because of a mere failure to extend the irrigation system in conformity with any notice of appropriation. They were trying to prevent the defendants from subverting water intended for a public use to private and extra-territorial purposes. It is evident that the West Side Canal Company was relying on the permission given by Congress to take water from the river and not upon the various notices introduced in evidence, because in its condemnation complaints it is alleged to be the owner of ''the right to take and divert from the waters of said Sacramento River, nine hundred cubic feet per second at all seasons of the year.''

Plaintiffs are not seeking to compel a spreading out of an insufficient supply of water over a large territory merely because it is mentioned in any notice of appropriation. Therefore the discussion in *Palmer* v. *Railroad Commission,* 167 Cal. 174, [138 Pac. 997], cited by appellants, is of no value here. The *quantum* of water available to the West Side Canal Company was not an issue in the case. The plaintiffs were seeking to prevent the creation of adverse claims to water which would embarrass and disadvantage them when the successors of Sheldon, under their contract and in accordance

therewith should (as the court found they intended to do) extend their canal and laterals to a place convenient for serving water to the complaining farmers. This is all that the decree seeks to accomplish.

The judgment is affirmed.

Shaw, J., Henshaw, J., Lorigan, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.