[S. F. No. 11502. In Bank.—September 14, 1925.]

## LA MESA, LEMON GROVE AND SPRING VALLEY IRRIGATION DISTRICT (a Public Corporation), Petitioner, v. JOHN H. HALLEY, President of the Board of Directors, etc., et al., Respondents.

[1] Irrigation Districts—Management and Conduct—Statutes in Force at Time of Organization—Change by Legislature.—As to the general powers of an irrigation district · or as to the methods of its management and conduct or as to the method or manner of issuing bonds for the purpose of carrying on the work of said district or fulfilling the purposes of its organization, such a district is not limited and the people and property owners with the same are not confined to the precise terms of the statutes in force at the time of the organization thereof; and such statutes do not constitute a contract between the state and the individual property owners who voted to create said district, but the same may be changed by subsequent legislation.

[2] Id. — Bond Elections—Assessments — Change of Procedure — Legislative Discretion.—A change as to the amount in value of land within an irrigation district to be represented by the electors voting upon the question as to the issuance of bonds is a matter addressed to the discretion of the legislature in the first instance and, like other changes in the law having relation to the manner and method of levying and collecting assessments for the payment of the principal and interest of the bonds of the district and

of the fixation and collection of tolls and charges for the use of the water thereof, is subject to change by the legislature, at least until such time as definite private rights have been acquired and become vested under a prior state of the law.

[3] ID.—DESTRUCTION OF UNSOLD BONDS—JURISDICTIONAL FACTS—FINDINGS OF BOARD OF DIRECTORS.—Under section 106 of the Irrigation District Act (Stats. 1897, pp. 254–286), as a prerequisite to the exercise of the power given to the board of directors of an irrigation district to call an election for the purpose of voting upon a proposition to destroy unsold bonds, said board must make a finding of the fact of the "completion of its ditch system and the payment of all demands against such district" and also that the bonds voted to be issued by said district, but not sold, are "not necessary to be sold for the use of said district"; but such finding need not be in writing.

[4] ID.—ABANDONMENT OF IMPRACTICAL PROJECT—DESTRUCTION OF UNSOLD BONDS—PROCEDURE.—Under said section 106 of the Irrigation District Act, when bonds have been voted for the construction of a ditch system for an irrigation district and have been partially devoted to that purpose, and when the plans for such construction have been found to be impractical and have been abandoned, and when the district has by contract or otherwise provided itself and its inhabitants with another and complete ditch system, it may in good faith revoke and destroy its unissued remainder of such bonds by acting in accordance with the procedure outlined in sections 106, 107, and 108 of said act.

[5] ID.—JURISDICTION TO CALL ELECTION—IMMATERIAL IRREGULARITIES. Where the board of directors of an irrigation district has properly determined that the basic facts exist for the calling and holding of an election for the purpose of voting upon a proposition to destroy unsold bonds, it has jurisdiction to call and hold the same; and, where such election is called and held in substantial compliance with the provisions of sections 107 and 108 of the Irrigation District Act, such election will not be held invalid because of mere irregularities consisting of a failure to comply with certain statutory requirements which the legislature might in the first instance have failed to enact.

[6] ID.—OPTION TO PURCHASE WATER SYSTEM—AGREEMENT TO FURNISH WATER TO OUTSIDERS—VALIDITY OF BONDS VOTED.—There is no merit in the contention that a provision in an option agreement by which the water supply and ditch system of a private water company is to be acquired by an irrigation district through the medium of a voted bond issue, to the effect that the district, if such option is exercised, is to sell to said private water company a sufficient quantity of water to enable it to supply water to certain regions

outside the boundaries of the irrigation district, is a void provision, and hence that the entire option is void and thus forms no sufficient basis for the issuance of the bonds voted.

(1) 12 C. J., p. 1003, n. 43; 40 Cyc., p. 821, n. 23 New, n. 84, p. 822, n. 34 New. (2) 12 C. J., p. 968, n. 10, 11; 40 Cyc., p. 817, n. 85 New, p. 821, n. 28, p. 822, n. 34 New. (3) 40 Cyc., p. 824, n. 50 New. (4) 40 Cyc., p. 824, n. 50 New. (5) 40 Cyc., p. 824, n. 50 New. (6) 40 Cyc., p. 822, n. 32.

PROCEEDING in Mandamus to compel the president and the secretary of an irrigation district to sign and attest certain bonds. Writ issued.

The facts are stated in the opinion of the court.

Crouch & Sanders for Petitioner.

Sweet, Stearns & Forward for Respondents.

Herbert C. Kelly for Interveners.

Flint & MacKay and Arthur R. Smiley, *Amici Curiae.*

RICHARDS, J.—The petitioner herein seeks a writ of mandate directed to the respondents herein in their capacity, respectively, of president and secretary of the petitioner, an irrigation district, commanding the said respondents in their foregoing capacity to forthwith sign and attest certain bonds and coupons of said irrigation district as designated in its said application for said writ. The facts set forth in said application as the basis thereof substantially show that the petitioner is and for some period prior to the filing of said application was an irrigation district duly organized and existing as such under the laws of the state of California and that the respondents were and are the duly elected, qualified, and acting officers thereof; that on April 5, 1924, one Ed Fletcher, sole surviving partner of a certain copartnership doing business under the firm name and style of the Cuyamaca Water Company, gave to the petitioner herein an option to purchase a certain water system then and theretofore owned by said copartnership on and along the San Diego River in the county of San Diego, state of California, for the sum of $1,100,000; that the petitioner

duly accepted said option and thereafter and by an order of the board of directors of said petitioner, duly authorized and taken pursuant to a petition of the requisite number of the qualified electors within said irrigation district requesting the same, a special election was called, to be held within said irrigation district on the seventh day of November, 1924, at which election there was to be submitted to the electors of said district the question as to whether or not bonds of said district should be issued in the sum of $2,500,000 in par value for the purpose of acquiring said water system of said Cuyamaca Water Company, and also of acquiring waters, water rights, reservoir sites, and other property for the use and purposes of said district in order to enable it to carry out and comply with the provisions of the California Irrigation District Act, under which it was organized, and any other act supplementary thereto authorizing such districts to acquire property and construct works. That said election was thereafter duly and regularly held on the seventh day of November, 1924, at which said election a majority of the said qualified electors of said district voted in favor of the issuance of such bonds. Copies of said order and call of said bond election and of the notice thereof and of the propositions submitted thereat and of the vote of the electors of said district voting at said election and of the canvass showing the result thereof are attached as exhibits to said application. That thereafter, and on November 10, 1924, the board of directors of said district, by resolution duly passed and adopted, provided and directed that in conformity with the constitution and laws of the state of California and of the proceedings theretofore had and taken by said district and pursuant to the said bond election thus held in conformity therewith, a bonded indebtedness of said district be created in the principal sum of $2,500,000 and that in evidence thereof bonds of said district be issued in and to the extent of said sum consisting of 2,500 bonds of the denomination of $1,000 each and in the form specified by law. That thereafter the said board of directors of said district, pursuant to the proceedings theretofore had, caused 2,500 bonds of said district in said amount and in due form to be prepared and presented to the respondents herein as the president and secretary, respectively, of said irrigation district for their, and each of

their, respective signatures and attestation and requested
said officials to so sign and attest the same and the interest
coupons attached thereto, but that the said respondents,
as said officials of said district respectively have refused
and continued to refuse to sign or attest said bonds or any
of them or the interest coupons attached thereto or any of
them. Following these averments the petitioner presents
certain alleged urgent reasons for the presentation of its
said application to this court and prays for the issuance of
said writ. The petitioner herein did not in its said appli-
cation undertake to set forth or enlighten this court as to
the reasons proffered by the respondents herein for their
and each of their refusal to sign and attest said bonds, but
notwithstanding the defect in their said application in that
regard, an alternative writ of mandate was issued and made
returnable before this court at a later date. In response
to said alternative writ of mandate the respondents herein
appeared and presented their and each of their return to
said writ, wherein they purported to set forth fully the facts
and reasons upon which their and each of their refusal to
sign and attest said bonds was predicated and by so doing
eked out the deficiencies of the petitioner's application in
that regard. In their said return to said writ the re-
spondents set forth the fact that the petitioner was organ-
ized on the first day of November, 1913, under the provisions
of an act of the legislature approved March 31, 1897, pro-
viding for the organization of irrigation districts and under
the various acts amendatory thereof up to and including
the date of its said organization. That under the terms of
said prior acts certain provisions and requirements were
specified relating to the vote of the qualified electors within
the boundaries of each irrigation district, whereby its
organization was to be accomplished and the benefits and
burdens attendant upon and following such organization
were defined. The respondents aver that by virtue of such
organization of said irrigation district, under the terms of
said original and amendatory acts of the legislature as they
existed at the date thereof, a contract was created by opera-
tion of law between the state of California and the persons
whose property was affected by the creation and organiza-
tion of said irrigation district, under the terms and condi-
tions of which the property owners of said district con-

sented to the imposition upon themselves and their lands of such burdens in the way of bond issues as were to be resolved upon, voted and issued in the manner provided by the aforesaid acts of the legislature as the same existed at the date of said organization of said irrigation district and not otherwise. The respondents proceed to aver that, since the organization of said district, the legislature has adopted various acts amendatory of the aforesaid acts in existence at the time of the formation of said district, by the terms of which numerous changes have been made in the manner and method by which irrigation districts may issue bonds; and particularly has changed the provisions of section 30 of said original act in the respect that said original section provided that as a prerequisite to the calling of a special election to determine the question as to whether or not bonds should issue, a petition by a majority of the holders of title representing a majority in value of the lands in said district according to the equalized assessment-roll thereof was required; whereas, by the change or changes made in said original section by said subsequent acts or amendments thereof, a petition signed by 500 electors residing within said district and including the holders of title representing twenty per cent in value of said lands instead of a majority in value thereof as provided in said former act, was required. In addition to this alleged radical change in this particular section of the law as it read at the date of the organization of said district, the respondents set forth numerous other changes in the law affecting the issuance of bonds within such districts and also affecting the manner and method of the sale of such bonds and the provisions to be made for the payment thereof. The respondents also point out other changes effected by said subsequent legislation relating to the working methods of such irrigation districts differing materially from those contemplated by said prior acts in force at the time of the organization of said district, all of which the respondents aver were effected without the consent or knowledge of the land owners within said district and all of which were in violation of the aforesaid contract alleged to have been created between the state of California and the said land owners of said district by the organization of said district under such pre-existing laws. The respondents

further aver that the bonds of said district, which were voted to be issued as alleged in the petition herein, were purported to be voted for and authorized under such later statutes and under the changed terms and conditions created thereby and hence have been voted for, authorized, and at- tempted to be issued in violation of said contract and are void, and that therefore the respondents have acted properly in their refusal to sign or attest said bonds or the coupons attached thereto for the additional reason that said later enacted laws, under which said bonds have been attempted to be voted for and issued, are not only in violation of said contract, but are also in violation of the provisions of the federal constitution, which prohibit any state from enacting laws impairing the obligations of contracts; and also of the said constitution and of the state constitution forbidding the taking of private property without due process of law.

The respondents set forth in their return as another and further reason why they and each of them were and are justified in their refusal to sign and attest said bonds the following facts: They aver that theretofore and on the fourteenth day of May, 1914, an election was duly and regu- larly called and held within said irrigation district at which there was submitted to the qualified electors thereof the question as to whether bonds of said district to the amount of $1,232,500 should be issued for the purpose of acquiring water, water rights, and other property, con- structing necessary irrigation canals and works and other- wise carrying out the purposes of said district and the pro- visions of the act under which the same was organized. That said election was called and held and said proposed bond issue submitted to said electors of said district under a certain plan prepared by the hydraulic engineer of said district and which contemplated the utilization of a certain underground storage basin lying at the lower end of El Cajon Valley in the county of San Diego by sinking wells and by the installation of pumping plants at said point; and also contemplated the building of a dam and the creation of a storage reservoir in the gravel-beds of said region at a sufficient elevation to enable the consumers of water within said district to be supplied with gravity water. That said election was called and held in the manner provided by section 30 of the Irrigation District Act, as the same stood

at the time of such election, and resulted in the favorable vote of the requisite number of the electors of said district upon the issuance of said bonds; that thereafter and pursuant to said election the board of directors of said district caused bonds of said district in said amount of $1,232,- 500 to be prepared and signed by the proper officers thereof, and that thereafter there were sold and disposed of during the years 1914, 1915, and 1916 of said bonds the amount of $66,000 in par value thereof and no more, which latter amount of said bonds, with the exception of $10,000 in par value thereof redeemed by said district, are now outstanding in the hands of *bona fide* purchasers thereof; that the proceeds of said bonds so sold and disposed of were used by said district for the purpose of carrying out the plans and work provided for in the said engineer's report, but that the remainder of said authorized issue of such bonds amounting to the sum of $1,166,500 in par value thereof remained in the custody of said district available for the uses for which the same were voted, but not availed of by their sale or disposition therefor. That thereafter and while said bonds so remained unsold and undisposed of by said district, the board of directors of said district, purporting to act under sections 106, 107, and 108 of said Irrigation Act, called and held an election of the qualified electors of said district for the purpose of the election of directors thereat and also for the purpose of voting upon a proposition to destroy all of said remaining unsold bonds. The respondents proceed to set forth a number of respects in which said election was irregular and not in conformity with law, and then proceed to aver that at said election the votes of the qualified electors voting thereat were unanimously in favor of the destruction of said bonds; and that thereafter and pursuant to said election and on the seventh and eighth days of March, 1923, the directors of said district destroyed said unissued bonds. The respondents aver that said proceedings for the destruction of said bonds and which were consummated in the destruction thereof were wholly irregular, insufficient, and void and without authorization by the voters of said district, but that the same was accomplished at a time when the directors of said district had abandoned the plan of water development set forth in the report of the said hydraulic engineer of said district, upon the basis of

which said first bond election had been called and had for some years previous thereto been and then were purchasing water for the use of the inhabitants of said district from the Cuyamaca Water Company. The respondents aver that these bonds are still existing and valid obligations of the district, notwithstanding their attempted revocation and destruction and that as such the sum represented in their par value is still available for the purposes for which the new bond issue has been voted, and hence that the issuance of said new bonds was unnecessary and for that reason improper, and that respondents were and are justified in their refusal to sign and attest the same.

The respondents, as a further return to said alternative writ and additional reason for their refusal to comply with its mandate, allege that the option referred to in the petitioner's application providing for the purchase of the Cuyamaca Water Company's system to be paid for through the issue and sale of the bonds in question contains a provision by the terms and agreements of which the petitioner, if such option is exercised, is to sell and transmit to the Cuyamaca Water Company water at the fixed rate of nine cents per thousand gallons to be used in furnishing water for domestic uses to the inhabitants of the city of East San Diego and certain other communities lying outside of the boundaries of said irrigation district; and this, the respondents aver, the district has no legal authority to do or agree to do, and hence said option is in that regard *ultra vires* and void as beyond the power of said irrigation district to perform, and hence that the portion of said bond issue providing the amount of money necessary for the exercise of said option and the fulfillment of the terms and conditions thereof would be illegal and the bonds issued and to be sold therefore void. Wherefore, the respondents pray that the alternative writ issued herein be dismissed and the permanent writ sought herein be denied.

To the foregoing return of the respondents herein the petitioner rests its response upon a demurrer and by so doing admits the averments of fact embraced therein. We shall therefore take up the legal questions involved in the application for said writ and the response thereto in the order of their presentation. [1] The first contention of the respondents herein is that since the petitioner herein

was organized as an irrigation district in the year 1913 by a vote of the electors therein acting under the provisions of the Irrigation District Act of 1897 and the acts amendatory thereto in existence at the date of its said organization, the organization of said district by that means thereunder constituted a contract between the state and the individual property owners who as such electors voted to thus create said irrigation district, the obligations of which could not be changed or impaired by subsequent legislation. In making this contention the respondents chiefly rely upon the case of *Merchants Nat. Bank of San Diego* v. *Escondido Irr. Dist.*, 144 Cal. 329 [77 Pac. 937]. That was a case wherein the plaintiff was the trustee in two deeds of trust executed by the directors of the defendant, an irrigation district, as security for two series of bond issues and which purported to convey to the trustee the whole water system of the district as well as all of the other properties thereof. This trust deed was given under the supposed authority of section 17 of the Wright Act as amended March 11, 1893 (Stats, 1893, p. 175). The original act under which the said irrigation district was organized contained no such grant of powers to the directors of such districts, their powers thereunder being expressly confined to the issuance of bonds payable out of revenues derivable from annual assessments upon the real property within the district. (Stats, 1887, pp. 29–35.) The court held the provision in said original act thus limiting the powers of the board of directors of such corporation was in the nature of a contract between the state and the individual property owners of said district who had organized it pursuant to its limitations upon the powers of directors and which could not be changed by said subsequent legislation so as to lay the particular liability and burden upon their property. While the conclusion was, we think, correct as applied to the facts of that particular case, it is being attempted by the respondents herein to give to its language an application far beyond the intendment of the court in that decision. It was not our intention in that case to hold that as to the general powers of irrigation districts or as to the methods of their management and conduct or as to the method or manner of issuing bonds for the purpose of carrying on the work of said districts or fulfilling the purposes of their or-

ganization, such districts were to be limited or the people
or property owners within the same confined to the precise
terms of the statutes in force at .the time of the organization
thereof. Indeed, in later cases and with respect to public
agencies and utilities of the same general character as irri-
gation districts the courts of this state have laid down a
different rule. In the case of *Spurrier* v. *Neumiller*, 37 Cal.
App. 683 [174 Pac. 338] , the question involved was that of
the power of the legislature to amend the Reclamation Dis-
trict Act [Stats. 1911, p. 639] so as to change the method of
collecting assessments from that existing under the stat-
utes in force at the time of the organization of the district,
and to otherwise alter the procedure incident to the opera-
tion thereof. The court in that case adopted the broad
principle enunciated by the supreme court of the United
States in the case of *Wisconsin* v. *Powers*, 191 U. S. 379
[48 L. Ed. 229, 24 Sup. Ct. Rep. 107, see, also, Rose's U. S.
Notes], wherein it was stated that: "The broad ground in
a case like this is that, in view of the subject matter, the
legislature is not making promises, but framing a scheme
of public revenue and public improvement. In announcing
its policy and providing for carrying it out it may open a
chance for benefits to those who comply with its conditions,
but it does not address them, and therefore it makes no
promise to them. It simply indicates a course of conduct to
be pursued until circumstances or its views of policy change.
It would be quite intolerable if parties not expressly ad-
dressed were to be allowed to set up a contract on the
strength of their interest in and action on the faith of a
statute, merely because their interest was obvious and their
action likely, on the face of the law." In the case of *Fall-
brook Irr. Dist.* v. *Bradley*, 164 U. S. 112 [41 L. Ed. 369,
17 Sup. Ct. Rep. 56], the supreme court of the United
States further declared that: "The formation of irriga-
tion districts is accomplished by proceedings so closely an-
alogous to those prescribed for the formation of swamp-land
reclamation districts that the decisions with respect to the
latter are authority as to the former." The close similarity
between those public or state agencies which are denominated
irrigation districts and those other and to a larger degree
similarly empowered and conducted public or state agencies
which are denominated municipal corporations being thus

established and declared, the general principles which are applicable to the one should also be susceptible of application to the other; and these general principles in so far as they have relation to the legislative control over the organization, management, conduct, and manner and method of creating and of liquidating their obligations have so frequently been expounded as to render any extended comment upon the many cases defining and applying the same unnecessary in relation to the instant case. These general principles have been thus broadly and tersely stated in 6 Ruling Case Law, at section 337 thereof, under the title "constitutional law" as follows: "In determining whether a statute affecting a municipal corporation operates as an impairment of the obligation of a contract, regard must be had to the distinction between the rights of such a corporation in its public or governmental capacity and its private rights. So far as a municipality is an agency of government, it has no rights or powers which, as between it and the state, the legislature may not modify or abrogate at pleasure. Neither the charter of a municipal corporation, nor any legislative act regulating the use of property held by it for governmental or public purposes, is a contract within the meaning of the federal constitution." (Citing many cases.) In so far as any language employed in the case of *Merchants Nat. Bank, etc.,* v. *Escondido, etc., supra,* would seem to be in conflict with these later authorities it must be deemed to be overruled. The respondents herein, however, make the contention that this court in the recent case of *Peery* v. *City of Los Angeles,* 187 Cal. 753 [19 A. L. R. 1044, 203 Pac. 992], has approved in its broadest application the doctrine which the respondents insist was declared in that decision; but an examination of the later case will disclose that the doctrine that the legislature may not change the law governing the issue and terms of disposition of bonds by cities was given application to a condition wherein certain bonds of the city of Los Angeles had already been voted and issued prior to the making of a change in the law permitting such bonds to be disposed of below par in contravention of the terms of the law in existence at the time of the election, whereby the electors voted to issue and sell the bonds of the city at par and not otherwise. It is clear that no such question is presented in the instant case, and nothing said

therein can be interpreted as warranting the application of the doctrine applicable to the particular facts of the earlier case to the situation presented in the case at bar. [2] There are certain particular contentions urged by the respondents in their assault upon the subsequent legislation as affecting an irrigation district coming into being under an earlier state of the law; as, for example, the respondents aver that the law was changed as to the amount in value of land to be represented by the electors voting upon the question as to the issuance of bonds and that such change in the law constituted a violation of the alleged contract between the owners of such lands and the state created in the organization of said districts under the earlier state of the law. In the case of *In re Madera Irr. Dist.*, 92 Cal. 296, 320 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675], it was, however, held that the question as to the proportion of land to be held by those imposing by their vote a burden upon the owners of the lands within the district, was a matter purely addressed to the discretion of the legislature in the first instance; and if so, then the change in the law in that regard would be as was said in that case, "but an incident and not of the essence of the matter," and the same may be said of the various other changes in the law having relation to the manner and method of levying and collecting assessments for the payment of the principal and interest of the bonds of the district and of the fixation and collection of tolls and charges for the use of the water thereof. These are all matters which the legislature may change and adjust at will with relation to these public agencies at least until such time as definite private rights have been acquired and become vested under a prior state of the law. None such have thus far been shown to exist in so far as this first contention of the respondents is concerned and we are therefore of the opinion that there is no merit in their said contention.

The second contention which the respondents make is based upon the showing made in their said return to the alternative writ issued herein to the effect that there had been a prior issue of bonds voted for by said district to the amount in par value of $1,232,500, of which but $66,000 worth in par value had actually been issued and sold, and that as to said unissued bonds the electors of the district had

voted to revoke and destroy the same under the provisions of sections 106, 107, and 108 of the Irrigation District Act, but which vote and the election at which the same was authorized was for certain reasons assigned by the respondents irregular and void, and hence said unissued bonds have continued to be and are validly voted and existing bonds of said district and available as such for sale and for the application of their proceeds to the purposes for which the present bond issue is sought, and hence that such present bond issue is unnecessary, and the respondents are therefore justified in their refusal to sign and attest said bonds presently sought to be issued and sold. [3] Section 106 of the Irrigation District Act (Stats. 1897, pp. 254–286) provides as follows:

"Whenever there remains in the hands of the board of directors of any irrigation district heretofore organized, or organized under the provisions of this Act, after the completion of its ditch system, and the payment of all demands against such district, any bonds voted to be issued by said district, but not sold, and not necessary to be sold for the raising of funds for the use of such district, said board of directors may call a special election for the purpose of voting upon a proposition to destroy said unsold bonds, or so many of them as may be deemed best, or may submit such proposition at a general election."

It would seem from a reading of this section of said act that as a prerequisite to the exercise of the power given to the board of directors of an irrigation district to call an election for the purpose of voting upon a proposition to destroy unsold bonds, the said board of directors must have made a finding to the fact of the "completion of its ditch system and the payment of all demands against such district," and also that the bonds voted to be issued by said district, but not sold, were "not necessary to be sold for the use of said district." Upon the hearing had upon the return on the alternative writ issued herein it was stipulated that the board of directors did in fact make an oral finding as to the foregoing facts at the time of the issuance of its call for said election. It is the contention of the respondents, first, that said oral findings would not be sufficient; and, second, that such findings, even if sufficient in form, would not be in accord with the facts. As to the first of these

contentions it has been decided that the findings of bodies of this character as to the existence of particular facts upon which their orders are to be predicated need not be in writing unless the statute so expressly requires (*Chase* v. *Trout,* 146 Cal. 350–356 [80 Pac. 81]). As to the second of said contentions, if we are to assume that the said findings of the board of directors would not, in the absence of fraud, be conclusive upon these respondents as the merely administrative officials of the district, and this we do not decide, it seems clear to us that the respondents herein have alleged themselves out of court, since it affirmatively appears upon the face of their said return that the original bond issue was voted for the purpose, in a large part at least, for the development of a water system according to plans of the then engineer of the district and that the said irrigation district after the expenditure of the sum of $66,000 of the money derived from the sale of a corresponding portion of the said first bond issue for the purposes and in furtherance of the project for which said bonds were thus voted, definitely abandoned the same for the reason that such plans for the provision of a water and ditch system proved to be impractical, and proceeded to provide a water and ditch supply the same to the inhabitants thereof for irrigation and system for the uses of said district from other sources and to domestic uses through a distributing system owned and maintained by the Cuyamaca Water Company under a contract for the acquisition and distribution of said water with the latter. It thus appears that while the plans for a water supply and ditch system for the development of which said earlier issue of bonds was voted had been long since abandoned as apparently impractical, the said irrigation district did in fact have a complete water and ditch system for the distribution and use of water at the date when it was so found by the board of directors thereof and when said board directed that an election be called and held for the purpose of voting upon the question of the revocation and destruction of said bonds. These affirmative averments on the part of the respondents place the matter in a position wherein we are disposed to hold that the findings of the board to the effect that the ditch system of the district had so far reached completion that the bonds formerly voted to be issued by the district, but not sold, were no longer necessary to be sold

for the raising of money for use of said district for the purposes for which such unused bonds had been voted cannot be held by us to be contrary to the fact. It would thus sufficiently appear that the purposes for which such bonds were issued in so far as practical had been subserved and that said bonds under the plans for the carrying into effect of which they had been voted could not be made available for the later developed purposes for which the new issue of bonds was to be required. [4] It would be altogether too narrow an interpretation of section 106 of the Irrigation District Act to hold that when bonds have been voted for the construction of a ditch system for an irrigation district and have been partially devoted to that purpose; and when the plans for such construction have been found to be impractical and have been abandoned, and when the district has by contract or otherwise provided itself and its inhabitants with another and complete ditch system, it may not in good faith revoke and destroy its unissued remainder of such bonds by acting in accordance with the procedure outlined in sections 106, 107, and 108 of the Irrigation District Act. [5] With regard to the averments of the respondents' return to the effect that the election ordered and held in said district in attempted conformity with these sections of said act was irregular in certain designated respects, it was stipulated at the hearing upon the return to said alternative writ that the said election was called and held in substantial compliance with the provisions of sections 107 and 108 of said act. It seems to be conceded, however; that there were certain irregularities in the conduct of said election; as, for instance, that the notice of said election did not contain a number of the matters required to be set forth therein by the terms of section 107 of the act; and also that the proposition as printed on the ballot was not precisely in the form prescribed by said section. If, however, the board of directors of the district had, as we have interpreted its stipulated findings, properly determined that the basic facts for the calling and holding of such an election existed, it had acquired jurisdiction to call and hold the same; and this being so and said section 107 having provided that "such election shall be held in the same manner as other elections held under the provisions of this act," it would seem to follow that whatever departures there may have been

from the precise directions of said section would constitute mere irregularities in the calling and conduct of the same. By reference to section 30 of said act, which provides the procedure for calling and holding bond elections, we find practically the same procedure as that provided for in section 107 of the act. By the terms of section 30 of said act it is provided that: "No informalities in conducting such election shall invalidate the same if the election shall have been otherwise fairly conducted." By the terms of section 71 of said act, which has reference to the institution and trial of actions contesting the validity of bond elections, it is provided that: "The courts hearing any of the contests herein provided for, in inquiring into the regularity, legality or correctness of such proceedings must disregard any error, irregularity or omission which does not affect the substantial rights of the parties to such action or proceeding." The foregoing sections of said act received the careful consideration of this court in the case of *Imperial Land Co.* v. *Imperial Irr. Dist.*, 173 Cal. 660 [161 Pac. 113], and were therein held to be adequate to foreclose an attack upon a proceeding based upon mere irregularities or upon a failure to comply with statutory requirements which the legislature might in the first instance have failed to enact.

It is therefore evident, both from the absence of any averment or showing of the respondents to the contrary, but also from their stipulation as well as from the fact that at said election the electors who voted thereat voted unanimously in favor of the destruction of said bonds, that no substantial rights of the said district or of the property owners or electors thereof were injuriously affected by any of the alleged irregularities in the calling or holding of said election or by the destruction of said bonds which was effectuated as a result thereof.

[6] The final contention which the respondents make is that the provision in the option agreement by which the water supply and ditch system of the Cuyamaca Water Company is to be acquired through the medium of the recently voted bond issue, to the effect that the district, if such option is exercised, is to sell to the said company a sufficient quantity of water to enable it to supply water to certain regions outside of the boundaries of the irrigation district, is a void provision; and hence that the entire option

is void and thus forms no sufficient basis for the issuance of the bonds in question; and that they are therefore justified in refusing to sign or attest the same. This contention has no merit (*Hewitt* v. *Pleasant Valley Irr. Dist.*, 124 Cal. 186 [56 Pac. 893]; *South Pasadena* v. *Pasadena Land & Water Co.*, 152 Cal. 579 [93 Pac. 490]; *Byington* v. *Sacramento Valley etc. Co.*, 170 Cal. 124 [148 Pac. 791]).

It is our conclusion from the foregoing considerations that the respondents herein have failed to show any sufficient justification for their and each of their failure and refusal to sign and attest the bonds in question and the coupons attached thereto; and that the peremptory writ should issue as prayed for. It is so ordered.

Lawlor, J., Shenk, J., Seawell, J., Lennon, J., and Waste, J., concurred.