[Civ. No. 2979.   Third Appellate District.—November 3, 1925.]

## GLENN–COLUSA IRRIGATION DISTRICT, Respondent, v. JOHN PAULSON, Appellant.

[1] WATERS AND WATER RIGHTS—PUBLIC USE—CONSTITUTIONAL LAW —SECTION 552, CIVIL CODE, INAPPLICABLE.—Section 552 of the Civil Code, which provides that "Whenever any corporation, organized under the laws of this state, furnishes water to irrigate lands which said corporation has sold, the right to the flow and use of said water is and shall remain a perpetual easement to the land so sold, at such rates and terms as may be established by said corporation in pursuance of law. And whenever any person who is cultivating land on the line and within the flow of any ditch owned by such corporation, has been furnished water by it with which to irrigate his land, such person shall be entitled to the continued use of said water, upon the same terms as those who have purchased their land of the corporation," must be read as applying to situations and conditions not affected by section 1 of article XIV of the state constitution, which specifies that the use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared to be a public use, and subject to the regulation and control of the state, in the manner prescribed by law, etc.

[2] ID.—WATER FURNISHED BY PUBLIC UTILITY—RIGHTS CONTROLLED BY CONSTITUTION.—Any rights accruing to the service of water after the adoption of the constitution, if the water is furnished by a public utility, is controlled by section 1 of article XIV of the constitution, irrespective of the provisions of section 552 of the Civil Code.

[3] ID.—RIGHT OF SERVICE—ABSENCE OF EASEMENT OR FREEHOLD INTEREST—STATE CONTROL.—A right of a consumer of water is not a water right in the sense of a private freehold interest in the real estate of the distributing company, but simply a right of service so long as the public utility controls the instrumentality rendering the service; and the exercise and enjoyment of such right of service does not create an easement such as is contemplated by section 552 of the Civil Code, but is a service rendered by a public utility subject to the regulation and control of the state in such manner as may be prescribed by law.

[4] ID.—DISCONTINUANCE OF SERVICE—JURISDICTION OF RAILROAD COMMISSION.—The Public Utilities Act explicitly gives the Railroad Commission authority to determine whether a public utility may or may not discontinue its service.

[5] ID.—APPLICATION TO DISCONTINUE SERVICE—APPEARANCE BY INTERESTED PARTIES—RIGHT TO PETITION FOR MODIFICATION OR REHEARING—CERTIORARI.—Where, upon the application of an insolvent irrigation and canal company to transfer its properties to an irrigation district, and to be thereupon and thereafter relieved from all its obligations as a public utility, certain property owners whose lands had theretofore been served by said irrigation and canal company, but were not included within the confines of said irrigation district, voluntarily appeared before the Railroad Commission and sufficiently showed themselves to be parties in interest, they had a right to petition for a rehearing before the Railroad Commission, and also of petitioning for a modification of the order of the Commission so far as it affected the conditions under which water service should be continued to them, and upon the denial of such petition for rehearing, to apply to the supreme court for a writ of review.

[6] ID.—FINALITY OF ORDER OF RAILROAD COMMISSION—REVIEW BY SUPREME COURT—EXCLUSIVE JURISDICTION.—Under section 67 of the Public Utilities Act, the supreme court is given the exclusive jurisdiction to review, reverse, correct, or annul any order or decision of the Railroad Commission; and an order of the commission, though palpably erroneous in point of law, must stand

3.  See 26 Cal. Jur. 482.

4.  Right of public utility, to discontinue service, notes, 11 A. L. R. 252; 21 A. L. R. 578.

6.  See 22 Cal. Jur. 20.

as a proper and legal order in the premises, until some order to the contrary may be issued by the supreme court.

[7] ID.—INSOLVENT PUBLIC UTILITY—PURCHASE BY IRRIGATION DISTRICT—RIGHTS OF FORMER USERS OUTSIDE DISTRICT—JURISDICTION OF RAILROAD COMMISSION.—Under section 1 of article XIV of the state constitution, the Railroad Commission is authorized to determine how the water, or the service thereof involved, should be controlled or supplied, and to direct that the user of the water should place himself in a position where the control and use of the water would be under the jurisdiction of some district or agency authorized to fix rates and collect such reasonable compensation for the service as would defray the expenses thereof, properly chargeable to the lands in question, and it is also within the jurisdiction of the Railroad Commission, in permitting the purchase of the properties of a public utility about to go out of existence, to provide that those who had theretofore had the benefit of the service of that public utility should be received within the territorial limits of the irrigation district as tracts of land, so far as the lands were concerned, and the owners thereof, upon an equal footing with the lands already included in the district and the rights and privileges possessed by the owners thereof.

---

(1) 40 Cyc., p. 814, n. 60, p. 835, n. 44.    (2) 40 Cyc., p. 830, n. 11. (3) 40 Cyc., p. 815, n. 62, 63, p. 835, n. 44.    (4) 40 Cyc., p. 825, n. 64 New, p. 835, n. 48 New.    (5) 40 Cyc., p. 835, n. 48 New. (6) 40 Cyc., p. 835, n. 48 New.    (7) 40 Cyc., p. 835, n. 48 New.

APPEALS from judgments of the Superior Court of Glenn County. C. J. Luttrell, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. M. Rankin for Appellants.

Hankins & Hankins for Respondent.

Carl I. Wheat, Woodward M. Taylor and Reginald L. Vaughan as *Amici Curiae.*

PLUMMER, J.—In this proceeding three cases are involved, to wit, one bearing the above title, one *Glenn-Colusa Irrigation District* v. *B. G. Kline and Minnie E. Kline,* superior court action, number 3300, and *Edna L. Knight* v. *Glenn-Colusa Irrigation District,* superior court action, number 3435. It is stipulated that all three cases should be

tried as one in the superior court upon the testimony introduced in the case of *Glenn-Colusa Irrigation District* v. *John Paulson*, that separate judgments should be entered in each action, that the appeals herein should be combined, one transcript being used for the three appeals, and that when judgment is entered in the case of *District* v. *Paulson* a like judgment should follow in the other cases. This action was begun by the respondent Irrigation District to enjoin the appellant Paulson from interfering with the ditches owned by the respondent District; also, to restrain him from diverting water therefrom. The plaintiff had judgment and the defendant appeals.

The transcript shows that the appellant owns land situate within the flow of that certain canal known as and called the Central Canal, which canal was used for a considerable period of time in conveying water to a certain area of land known as and called the Central Irrigation District. The appellant purchased his land prior to the first day of October, 1913, and from that date up to and including the season of 1921, received water for irrigation purposes from the Central Canal and used the same in the irrigation of the lands owned by him. At the trial it was stipulated that the recital of facts set forth in the opinion of the supreme court in the case of *Byington* v. *Sacramento etc. Co.,* 170 Cal. 124 [148 Pac. 791], should be admitted as testimony to be considered in the case as competent evidence of the facts therein set forth. The same stipulation was enterd into concerning the recital of facts in the case of *Rogers* v. *Sacramento etc. Co.,* decision No. 2483, case No. 597, and *Sacramento Realty Company* v. *Sacramento Valley West Side Canal Co.,* No. 673, both reported in Volume 7, pages 133 and 153, Opinions and Orders of the Railroad Commission. The statement of facts set forth in the Byington case, *supra,* is very lengthy and therefore we epitomize the same as follows: The Central Irrigation District was organized in November, 1887, and contained about 156,000 acres of land situate in the counties of Glenn and Colusa. This district did some construction work, but made no appropriation of water and never conducted any water through any of its canals or ditch system. In 1897, in an action begun by the district, it was held that the Central Irrigation District was not legally formed, 117 Cal. 382 [49 Pac. 354]. There-

after, one Byron Beckwith, Sr., in connection with two men, one named Sheldon and one named Schuyler, on or about January, 1903, obtained a lease for a period of fifty years from the Central Irrigation District to Sheldon of all the Central Canal's properties and rights connected therewith. This lease did not convey any water rights, as the Central Irrigation District does not appear to have possessed any at that date. Litigation ensued among these three persons, but not relevant to anything we are considering in this action. In February, 1903, Sheldon, Schuyler, and others incorporated the Central Canal and Irrigation Company and posted notices of appropriation of water in practically the same places that Beckwith, Sr., hereinbefore named had previously posted notices. In 1904 Sheldon assigned the lease held by him to the Central Canal and Irrigation Company. This company, it appears, did considerable work upon the canals involved in this action and extended the same to the Sacramento River. In 1906 the Central Canal and Irrigation Company obtained from Congress the right to divert and appropriate 900 second-feet of water from the Sacramento River and in 1907 diverted some water so appropriated. In 1909 J. S. and W. S. Kuhn acquired the outstanding bonds of the Central Irrigation District and also the capital stock of the Central Canal and Irrigation Company and proceeded to organize the Sacramento Valley Irrigation Company, and also organized another company known as the Sacramento Valley West Side Canal Company. The first-named company was to handle the sale of land and the latter company was to handle the distribution of water. The lease hereinbefore referred to was in 1909 transferred to the Sacramento Valley West Side Canal Company. This company, the transcript shows, went into the hands of a receiver in 1915 and thereafter the property herein named went into decay, distribution of water was unsatisfactory, and in order to conserve the properties and maintain an irrigation system whereby the waters flowing through the Central Canal might be utilized, the Glenn-Colusa Irrigation District was organized under the provisions of the Wright-Bridgeford Irrigation Act of the state of California (Stats. 1897, p. 254). This district, prior to the institution of the actions now pending, had become the owner of all the irrigation properties herein referred to and of the water, water

rights and privileges connected therewith. Prior to and coincident with the acquisition of said properties by the Glenn-Colusa Irrigation District, application was made by the Sacramento Valley West Side Canal and Irrigation Company and the receiver thereof to the Railroad Commission of the state of California for permission to transfer all of the properties herein referred to to the Glenn-Colusa Irrigation District, and to be thereupon and thereafter relieved from all its obligations as a public utility. At the hearing before the Railroad Commission the application of the West Side Canal and Irrigation Company for the transfer of its properties to the District and to be relieved of all public utility obligations, the appellant in this case and the appellants in the two companion cases, appeared and protested against the granting of such permission. The application of the Sacramento Valley West Side Irrigation Company was granted and on or about the thirtieth day of June, 1921, the Railroad Commission in said matter made and entered the following order:

"Application having been filed herein for the approval by this commission of the proposed transfer by the Sacramento Valley West Side Canal Company, a corporation, and Alger Fast, the receiver thereof, and other parties in interest, of certain properties comprising the public utility irrigation system described in said application, to the Glenn-Colusa Irrigation District and others, free and clear of public utility obligations; protests thereto having been filed by certain users under said system, a public hearing having been held, testimony taken and other evidence received and the matter submitted;

"It is hereby ordered:

"1. Authorization is hereby granted for the sales and transfers by the Sacramento Valley West Side Canal Company, a corporation, and Alger Fast, receiver thereof, and other persons beneficially interested, to the Glenn-Colusa Irrigation District and other transferees, of the respective properties to be transferred as set forth and described in said application, and the forms of conveyances attached to said application are hereby approved.

"2. Approval and authorization of this commission is hereby granted for the discontinuance and termination of service as a public utility by the Sacramento Valley West

Side Canal Company, a corporation, and Alger Fast, receiver thereof, in the sale and distribution of water for compensation to the public by means of the properties, or any portion thereof, the sales and transfers of which are hereby authorized, upon the filing with this commission by said Sacramento Valley West Side Canal Company and Alger Fast, receiver thereof, of a certified statement showing that said sales and transfers authorized herein have been consummated.

"3. Approval and authorization by this commission is hereby granted for the withdrawal from public service by the Glenn-Colusa Irrigation District as to all properties herein authorized to be transferred to said district, and as to all territory heretofore served by means thereof, subject, however, to the following conditions:

"(a) Any land owner, user or consumer heretofore supplied by means of such properties, or any portion thereof, shall be entitled to receive water therefrom at the same rates and upon the same terms of service as heretofore until January 1, 1922.

"(b) If at any time prior to January 1, 1922, any land owner, user or consumer formerly supplied by that portion of the public utility system herein authorized to be transferred to the Glenn-Colusa Irrigation District shall have made application to said Glenn-Colusa Irrigation District to have his land included therein, and such application is denied, this order, in so far as it authorizes the withdrawal from public service by said district of said property herein authorized to be transferred to the Glenn-Colusa Irrigation District shall be null and void.

"4. Approval and authorization is hereby granted by this commission for the withdrawal from public service by Jacinto Irrigation District the Directors of Jacinto Irrigation District, the directors of Glenn-Colusa Irrigation District, and Merle B. Moon, as to all property herein authorized to be transferred to said Jacinto Irrigation District, the Directors of Jacinto Irrigation District, the Directors of Glenn-Colusa Irrigation District, and Merle B. Moon, and as to all territory heretofore served by said properties.

"The effective date of this order, as to authorization of the proposed transfer of properties, is hereby fixed as of June 30, 1921. As to the authorization herein granted for the

discontinuance of service as a public utility, or withdrawal from public service, as to any part of the territory herein referred to, the effective date is hereby designated as July 15, 1921.

"The foregoing opinion and order are hereby approved and ordered filed as the opinion and order of the Railroad Commission of the State of California.

"Dated at San Francisco, California, this thirtieth day of June, 1921.''

The following facts also appear to be practically admitted: That the Sacramento Valley West Side Canal Company was at the time of the transfer of its properties and prior thereto a public utility, subject to the control of the Railroad Commission, that the lands of the appellant had been served with water by such utility until the time of the order of the Railroad Commission ending the public service obligations of the said canal company, that the lands of the appellant are situated within the flow of waters carried to the Central Canal owned by the respondent District, that the lands of the appellant are not within the confines of the Irrigation District, but that the lands of the several appellants are either surrounded by or adjacent to the lands comprising the District and may properly be included therein; that the appellants have not availed themselves of the opportunity to petition for or have their lands included within the confines of the plaintiff Irrigation District; that the appellants have demanded service of water as theretofore rendered them by the Sacramento West Side Canal and Irrigation Company and tendered payment therefor to the District in sums corresponding with the rates charged for such services by the West Side Canal Company; that after the expiration of the time mentioned in the order of the Railroad Commission for the inclusion of the lands of the appellants within the District, the District refused and still refuses to deliver water for irrigation purposes to the appellants upon any lands owned by them situated outside of the area comprising the Irrigation District. This refusal is based upon the order of the Railroad Commission and also upon the action of *Jenison* v. *Redfield,* 149 Cal. 500 [87 Pac. 62], wherein the supreme court considers the purposes for which an irrigation district is formed and holds, in substance, that the purpose for which the district is formed is to

furnish water for irrigation only to the lands comprising the district, and that the authority of such a district to furnish water outside of its territorial limits does not exist. The appellant, relying upon section 552, Civil Code, and the Byington case, *supra,* insists that the order of the Railroad Commission, in so far as it directs the lands of the appellants in the three actions referred to herein, be included within the Irrigation District is void and that the transfer of the properties belonging to the Sacramento Valley West Side Canal Company to the Glenn-Colusa Irrigation District could only be made subject to the perpetual right or easement of the appellants to have their lands served with  water  for irrigation purposes in the same manner and in the same way that said lands had been served prior to the discontinuance of the canal company.   The Byington case, however, while saying, among other things, that the lands lying within the Central Irrigation District constituted the primary territory for the irrigation of which the waters of the respective streams mentioned in the opinion had been appropriated, does not decide the questions presented in this case.   In the Byington case the court was called upon to decide whether water could be taken away from lands lying within the primary territory referred to as the territory for the irrigation of which the waters had been appropriated and conveyed to other parcels of land and those parcels of land given a preferential right, and answered this question in the following language:

"The fundamental and all important proposition, then, is this, that a public service water company which is appropriating water under the constitution of 1879, for purposes of rental, distribution and sale, cannot confer upon a consumer any preferential right to the use of any of its water."

The court was of the opinion that the plaintiff in that case had the right to prevent the defendants from subverting water intended for public use to private and extraterritorial purposes.   No question of the termination of the public utility functions of the canal company were involved and no transfer of its properties but simply a subversion or misuse of waters controlled by the defendant was settled by the judgment of the court.   [1]   Section 552 of the Civil Code, which reads as follows: "Whenever any corporation, organized under the laws of this state, furnishes

75 Cal. App.—5

water to irrigate lands which said corporation has sold, the right to the flow and use of said water is and shall remain a perpetual easement to the land so sold, at such rates and terms as may be established by said corporation in pursuance of law. And whenever any person who is cultivating land on the line and within the flow of any ditch owned by such corporation, has been furnished water by it with which to irrigate his land, such person shall be entitled to the continued use of said water, upon the same terms as those who have purchased their land of the corporation,'' we think must be read as applying to situations and conditions not affected by section 1 of article XIV of the state constitution, which specifies that the use of all water now appropriated or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared to be a public use, and subject to the regulation and control of the state, in the manner prescribed by law, etc. The section of the Civil Code was adopted in 1872, the section of the constitution referred to is a part of the state constitution of 1879.

[2] Any rights accruing to the service of water after the adoption of the constitution, if the water is furnished by a public utility, is therefore controlled by section 1 of article XIV of the constitution, irrespective of the provisions of section 552 of the Civil Code. In the case of *Turner* v. *East Side Canal etc. Co.*, 168 Cal. 103 [142 Pac. 69], the court held: ''Under section 522 of the Civil Code, the owner of land lying on the line and within the flow of the canal of a company furnishing water for irrigation, who has been furnished water from such canal for the irrigation of his land, is entitled to have the supply of water continued upon the established rates and terms.'' The Turner case, although decided in 1914, did not involve any questions calling for the application of the statutory provisions reserving to the state relation and control of such waters. Again, in the case of *Butte Co. W. U. Assn.* v. *Railroad Com.*, 185 Cal. 218 [196 Pac. 265], the concurring opinion of Justice Shaw, relied upon by the appellant, must be read in the light of the facts there presented for consideration. The language called to our attention is: ''I think it is clear, both from the Civil Code (sec. 552), from our decisions on the subject, and from considerations of sound public policy and

justice that such consumers (customers within the district for the service of whom waters have been appropriated) would have a right to insist on the continuance of the supply to their lands, that such right would be paramount to that of consumers in any newly formed district," etc., and further: "I am of the opinion that if the company had thus disposed of this entire supply, it would have amounted to a dedication of that quantity of water to public use for irrigation exclusively upon the lands described in the several contracts, and that neither the company nor the Railroad Commission could enlarge the dedication or expand the territory entitled thereto, so as to give to other lands an equal right to receive water out of that one thousand second-foot in common with the lands described in such contracts. The land so described would be entitled to preference in such use and other lands could rightfully receive water only from the surplus remaining after the rightful users had taken the quantity they had respectively contracted for so far as it was required for beneficial uses on their lands," citing a number of cases.

The right of the Railroad Commission to permit the discontinuance of service by a public utility was not involved in the Butte County case. It was simply a question of whether the supply of water owned and furnished was adequate to permit of an additional area of arid lands being brought within the territory to be served by the water company. Under such circumstances, there would be no conflict between the provisions of section 552 of the Civil Code, and section 1 of article XIV of the constitution, and the requirement of section 552 of the Civil Code, read with the interpretation that so long as the company continued to furnish water, land owners coming within the terms of that section, were entitled to have their service continued and remain unimpaired by any attempt of the company to spread its waters over a territory larger than its supply would warrant. In the case of *Stanislaus Water Co.* v. *Bachman*, 152 Cal. 716 [15 L. R. A. (N. S.) 359, 93 Pac. 858], the distinction which we are making was partly drawn. It is there said, quoting from the syllabus: "If the water right of the company making the contract was in private ownership and use when the constitution of 1879 was adopted, it could not have the effect to dedicate its property to public

use without the consent, express or implied, of its owners. But, if it were otherwise, the constitutional provision as to the public use of water supplied for irrigation, is not intended to prevent a land owner from acquiring and attaching to his land, a right to the permanent use of water for its irrigation, subject only to the condition that the state may regulate and control the use." This latter statement, in and of itself, furnishes some ground for the contention of the appellant. The first clause of the syllabus, however, as we have said, draws the distinction which, we think, must be made. In *Leavitt* v. *Lassen Irrigation Co.*, 157 Cal. 82 [29 L. R. A. (N. S.) 213, 106 Pac. 404], the court limits the language used in the Bachman case, *supra*, and holds that it "must be construed in the light of the facts there presented. The court was there considering the claim of a water company to the right to collect rates in excess of those fixed by a contract made with its predecessor, its claim being in part founded on the theory that by a foreclosure sale it had acquired the water and distributing system free from that contract. The opinion, in the main, goes upon the theory that the water in control of the company was not subject to a public use, and upon that theory it was held that the contract to furnish water to Bachman's land attached the water-right to it as an appurtenance, with the right to receive water from the previous owner of the system and its successors at the contract rates." The opinion in the Leavitt case was concurred in by Justice Shaw who wrote the opinion of the court in the Bachman case. In the case of *Danley* v. *Merced Irrigation Dist.*, 66 Cal. App. 97 [226 Pac. 847], this court referred to sections 552 and 662, of the Civil Code, in relation to the acquiring of the right to the continued use of water, but in that case no questions arising under the constitution were involved. The only question involved was the power of the Irrigation District to enter into an agreement with the holders of contracts for the payment to them of a certain sum annually, and not whether the waters and water rights there being dealt with were or were not subject to the control and regulation of the state, by and through the agency of the Railroad Commission, and the rights mentioned in these sections of the Civil Code were referred to as rights or interests which the contracts did not purport to convey. The cases dealing with the sub-

ject directly make a distinction between water rights when acquired from a private concern possessed by a land owner and when the water is obtained from a public utility. In the latter case, the rule followed is clearly stated in the case of *Asher* v. *Hutchinson Water, Light & Power Co.*, 66 Kan. 496 [61 L. R. A. 52, 71 Pac. 813], where the supreme court of Kansas says: "An individual can acquire no vested right as against the public in the continued service of a public utility. Such a doctrine once admitted, would destroy the convenience as a public utility. It would then become hampered, and subject to the control of the individual, and made to subserve such interests, to the detriment of the public welfare." That case had to do with the removal of watermains belonging to a public utility, which had been ordered removed by a municipality having the authority so to do. A private individual, whose service would be cut off by such removal, sought an injunction to restrain such removal. The injunction was denied. In *Day* v. *Tacoma Ry. & Power Co.*, 80 Wash. 161 [L. R. A. 1915B, 547, 141 Pac. 347], the supreme court of Washington quotes with approval the language of the supreme court of Kansas, and cites in addition a large number of cases wherein it is held that a public utility may be regulated or permitted to change its service, as in that case the change of the location of a line of railway, even though it left the property of some individuals, who had located along the line of the abandoned right of way practically worthless. In the case of *Phelps* v. *Logan Natural Gas & Fuel Co.*, 101 Ohio St. 144 [128 N. E. 58], the rule announced by the supreme court of Kansas is followed by the supreme court of Ohio. In *Bryan* v. *Louisville & N. R. Co.*, 244 Fed. 650 [157 C. C. A. 98], the circuit court of appeals of the United States, for the eighth circuit, reviews a large number of cases and follows the rule before stated. The Bryan case involved the permission granted to a railroad to abandon its line for some twenty odd miles and to establish a new line. **[3]** The supreme court of this state in *Leavitt* v. *Lassen Irrigation Co.*, 157 Cal. 82 [29 L. R. A. (N. S.) 213, 106 Pac. 404], heretofore referred to, holds, in substance, that no private estate can be created in property devoted to a public use, and a consumer of water cannot have a water right in the sense of a private freehold interest in the real estate of the distributing company; that his right

is simply a right of service. This, of course, carries with it the right to that service so long as the public utility controls the instrumentality rendering the service. The exercise and enjoyment of such right of service does not create an easement such as is contemplated by section 552 of the Civil Code, but is a service rendered by a public utility subject to the regulation and control of the state in such manner as may be prescribed by law.

We are thus brought to the question as to the extent of regulation and control that may be exercised by the state through the agency of the Railroad Commission. If the cases which we have cited announce the correct doctrine that one served by a public utility only possesses a right of service in common with the class or status of those who are served by such public agency, we have no rights of property being dealt with taken away, limited, suspended, or destroyed. It is simply a question of the method of procedure through which that service may be continued, if continued, or if abandoned, under what conditions it may be abandoned. [4] The Public Utilities Act (Stats. 1911 [Ex. Sess.], p. 18), explicitly gives the Railroad Commission authority to determine whether the public utility may or may not discontinue its service. In the case of *Limoneira Co.* v. *Railroad Commission,* 174 Cal. 232 [162 Pac. 1033], the supreme court, in deciding a question relative to water rates, for water furnished by a public utility, held that the Railroad Commission had power to modify and practically annul the contract rates which had theretofore been agreed upon between the company and the consumer, and also that upon the sale of the water system to a public utility, which was devoted wholly to a public use, there could be no reservation of a private right of ownership as to a part of the property so devoted to public use. It is also held that the power to change the rates did not conflict with the federal constitution in so far as it prohibits the impairment of contracts. This case takes up and considers at length the powers of the Railroad Commission in controlling public utilities engaged in the distribution of water and concludes with the statement that, "in view of the provisions of our Constitution and the Public Utilities Act, and our decisions thereunder, we do not see how it can be doubted that the railroad commission had the power to determine for the purposes of the

exercise of its jurisdiction to regulate a public utility by the fixing of rates, subject to such power of review as is possessed by this court, all questions of fact essential to the proper exercise of that jurisdiction.'' While not expressly involved in this case and not directly deciding that question, we think it authority in support of the doctrine that the only right which a customer has, under such circumstances, is the right of service, and not any ownership or easement in the water furnished by the public utility; because, if there were an ownership in the water itself, it would amount to the taking of property without compensation and so be an unconstitutional exercise of power.

The record in this case is sufficient to show that the Sacramento Valley West Side Canal and Irrigation Company was hopelessly insolvent and that it was a case of either abandonment of the enterprise or a transfer of its properties to some irrigation system or company possessing the power to continue operations and distribution of water. The West Side Company was losing money and was in a position to take advantage of the doctrine laid down in the case of *Lyon & Hoag* v. *Railroad Commission,* 183 Cal. 145 [11 A. L. R. 249, 190 Pac. 795], where it is said that the Railroad Commission has no power to compel the continued operation of a public utility at a loss. To the same effect is the case of *Brooks-Scanlon Co.* v. *Railroad Com.,* 251 U. S. 396 [64 L. Ed. 323, 40 Sup. Ct. Rep. 183, see, also, Rose's U. S. Notes Supp.].

In making its decision relative to the discontinuance of its public utility functions by the West Side Canal Company and the permitting of a transfer of its properties to the Glenn-Colusa Irrigation District, the Railroad Commission was confronted with the fact that the Irrigation District was not a public utility subject to the regulations and control of the Railroad Commission (see *City of Pasadena* v. *Railroad Commission,* 183 Cal. 526 [10 A. L. R. 1425, 192 Pac. 25]), and, therefore, was under the necessity of making its orders conditional, as in that way only could the use of the water for irrigation purposes, as formerly furnished by the Sacramento Valley West Side Canal Company, be insured.

We think, from what has already been said, that the authority of the Railroad Commission to regulate and control the distribution of properties of the public utility known as the Sacramento Valley West Side Canal Company, as well

as the uses and conditions to be attached to the use of the water furnished by that public utility, has been satisfactorily shown and, therefore, there remains but one further question to be considered.

[5]  The appellant in this case and the appellants in the two companion cases voluntarily became parties before the Railroad Commission in its hearing upon the application of the Canal Company to discontinue its public utility functions and transfer its properties to the Glenn-Colusa Irrigation District, and while their appearance at that hearing was not accompanied with all the formalities which sometimes characterize such appearances, they sufficiently showed themselves to be parties in interest, and therefore had a right to petition for a rehearing before the Railroad Commission, or for a modification and also of petitioning for a modification of that order, so far as it affects the conditions under which water services should be continued, and upon the denial of such petition for rehearing, to apply to the supreme court for a writ of review.  [6]  Under section 67 of the Public Utilities Act, no court of this state, except the supreme court, possesses any jurisdiction to review, reverse, correct, or annul any order or decision of the Commission, and under the section of the constitution relating to the powers of the Railroad Commission, it expressly provides that no other limitations or provisions can affect the powers given to the Railroad Commission.  The superior court, therefore, possesses no power to alter or modify the determination of the Railroad Commission.  (*Marin Municipal Water Dist.* v. *North Coast,* 178 Cal. 324 [173 Pac. 473]; *Pacific T. & T. Co.* v. *Eshleman,* 166 Cal. 640 [Ann Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119].)  In *People* v. *Hadley,* 66 Cal. App. 370 [226 Pac. 836], the district court of appeal for the second district of this state had occasion to examine this question, and in the opinion in that case the authorities are fully cited to the point that the supreme court only possesses power to review the decisions of the Railroad Commission.  We quote therefrom the following, which we think applicable to this case: "It must therefore be accepted as the settled law of this state that no court other than the Supreme Court has jurisdiction to review, reverse, correct, or annul any decision or order of the Railroad Commission.  Even though the order by the Railroad Commis-

sion be palpably erroneous in point of law, until some order by the Supreme Court may be issued to the contrary the original order of the Commission must stand as a proper and legal order in the premises.'' Consequently, in this case, even though it may appear that the order of the Railroad Commission were erroneous, it would not authorize the annulment or setting aside of such order, the supreme court only having power to make such corrections. [7] We think, however, that section 1 of article XIV of the constitution fully covers this case, wherein the public use is reserved to the regulation and control of the state in the manner prescribed by law. These words, we think, fully authorized the Railroad Commission to determine how the water, or the service thereof involved, should be controlled or supplied, and to direct that the user of the water should place himself in a position where the control and use of the water would be under the jurisdiction of some district or agency authorized to fix rates and collect such reasonable compensation for the service as would defray the expenses thereof, properly chargeable to the lands owned by the appellants, and that it is also within the jurisdiction of the Railroad Commission, in permitting the purchase of the properties of the public utility about to go out of existence, to provide that those who had theretofore had the benefit of the service of that public utility should be received within the territorial limits of the Irrigation District as tracts of land, so far as the lands were concerned, and the owners thereof, upon an equal footing with the lands already included in the district and the rights and privileges possessed by the owners thereof.

The judgments of the trial court are affirmed.

Hart, J., and Finch, P. J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 31, 1925.