[S. F. No. 15761. In Bank.—July 1, 1937.]

J. P. MILLER et al., Petitioners, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent; C. W. CLARKE CO., Intervener.

Carr & Kennedy for Petitioners.

Ira H. Rowell, Roderick B. Cassidy and Gilmore Tillman for Respondent.

Hardin Barry and Cooley, Crowley & Supple for Intervener.

CURTIS, J.—Petition to review order of the Railroad Commission fixing rates to be charged petitioners for service rendered them by the C. W. Clarke Co., a corporation, in furnishing petitioners water for irrigating purposes. The petition also asks for a review of said order authorizing and directing the discontinuance by the C. W. Clarke Co. of water theretofore delivered to petitioners for the purpose of watering the latter's stock.

The C. W. Clarke Co. was adjudged to be a public utility by the Superior Court of the County of Modoc. The judgment in that action was affirmed by this court. (*Babcock* v. *C. W. Clarke Co.*, 213 Cal. 389 [2 Pac. (2d) 155].) Facts pertinent to the present action will be found stated in the opinion rendered in that case. A brief outline, however, of the further facts will assist in an understanding of the present opinion. The predecessors of the W. C. Clarke Co. were the owners of a tract of swamp land comprising about 4,500 acres lying in the county of Modoc. Through this tract of land Ash Creek ran in a westerly direction and emptied into Pit River. The owners were desirous of draining their said land, and for that purpose constructed a canal, the intake of which was located upstream from their said lands. The canal was several miles in length and extended in a westerly direction and finally emptied its waters into Pit River below the junction of Ash Creek and Pit River. Petitioners were the owners of lands lying along said canal. They were desirous of securing water from said canal for use upon their said lands. After some negotiations with the owners of said canal, the latter agreed that petitioners and the Babcocks, hereinafter more particularly referred to, might use the water in said canal for the purpose of irrigating the lands of petitioners during the irrigating season and also during the balance of the year for domestic and stock purposes. This arrangement continued for some years, when the lessee of C. W. Clarke Co. (the latter in the meantime having succeeded to the ownership of the swamp lands and of said

canal), refused to turn into said canal any water from Ash Creek and denied petitioners' right to receive from said canal any water either for purposes of irrigation or for watering stock. The result of this disagreement was that petitioners and the Babcocks instituted the action of *Babcock* v. *C. W. Clarke Co.* mentioned above. As stated above, the C. W. Clarke Co. was adjudged in said action a public utility as to that part of the water flowing in said canal which had theretofore been furnished to the landowners lying along said canal for the purpose of irrigating their said lands, and for domestic use and for watering livestock. The defendants in said action were the C. W. Clarke Co. and its tenant. In said judgment the court fixed the price for the use of said water for irrigation, domestic and stock purposes by the plaintiffs therein at "the sum of $1.00 per acre, or such other sum of money as may be provided by law for the irrigation of each acre of the lands of plaintiff hereinafter described". The acreage of the plaintiffs at the date of said judgment amounted to 595 acres, and the acreage of the present petitioners amounts to 265 acres. Subsequent to the trial of said action, the Babcocks, who were among the plaintiffs in said action and who were the owners of 330 acres of said lands, to whom there were awarded by said judgment the use of 330 inches of water, having acquired a private water right sufficient for their use, ceased to use any water from the Clarke canal and ever since then have discontinued said use. The Babcocks applied to the Railroad Commission to approve an agreement between them and the Clarke Company whereby the company would be relieved of all future public utility obligations to the Babcocks. This application was refused. At the same hearing, the commission by its order dated September 17, 1934, advanced the rate for irrigation water from $1 to $2.25 per acre per annum for two fifteen-day irrigation periods, and $1.50 per acre for each additional period of fifteen days. This order further provided for the discontinuance of deliveries of stock water outside of the irrigating season. No petition for a review of this order was ever made to this court. The company proceeded to comply with this order, but contempt proceedings were instituted by the petitioners against the company for the violation of the judgment rendered in the case of *Babcock* v. *C. W. Clarke Co., supra.*

Upon a hearing in said contempt proceeding before the Superior Court of the County of Modoc, the following order was made:

"It appearing to the court that the defendants had violated the provisions of the judgment heretofore rendered by this court, but that they had done so under circumstances that excused them from a wilful disregard of the provisions of said judgment; they are therefore hereby discharged, upon the understanding that they will not in the future, at any time, fail to furnish the plaintiffs the water for stock and domestic purposes to which plaintiffs are entitled under said judgment.

"It being the opinion of the court, that the order of the Railroad Commission to the effect that the defendants be absolved from furnishing water for stock and domestic purposes during the nonirrigating season is void, being in excess of its jurisdiction."

This order of court was dated December 24, 1935, and after that date the C. W. Clarke Co. complied therewith by furnishing to petitioners water for stock and domestic purposes during the nonirrigating season. The order of the commission of date September 17, 1934, remained in force, and was apparently acquiesced in by petitioners in so far as the same fixed the rate to be paid for irrigating water until the date of the present order, now under review in this proceeding, which bears date July 27, 1936. The present order fixes the rate for water delivered for irrigation, entitling the consumer to three irrigations during each year, if desired, at "$7.50 per miner's inch continuous flow per acre", and also orders C. W. Clarke Co. to discontinue further deliveries outside of the irrigating season "of stock water theretofore authorized by the judgment No. 2789" (being the judgment of the Superior Court of Modoc County, affirmed by this court in *Babcock* v. *C. W. Clarke Co., supra*). In this order the position of the commission was stated as follows: "The testimony of the water users, who are all stock raisers, is unanimously to the effect that none of them can afford to pay more than the present rate of two dollars and twenty-five cents ($2.25) per acre even with stock water furnished throughout the year without additional charge. It is clear that the Company can no longer afford to operate under present rates and equally evident that this Commission can-

not require it to continue service at an out-of-pocket loss without confiscating its property without due process of law. The situation since withdrawal of the Babcocks as consumers is as regrettable as it is most unfortunate and hopeless. Delivery of water to the few remaining consumers will necessitate a rate of seven dollars and fifty cents ($7.50) per acre year. If the service at this price is prohibitive to the consumers, there remains nothing further than the abandonment of the public utility service.''

In this proceeding for a review of the order of the commission, the Clarke Company asked and was granted leave to intervene. It has appeared herein and filed a brief in support of the order of the commission fixing the rate to be charged by it for irrigating water at $7.50 per acre, and directing it to discontinue furnishing stock water to petitioners. The commission is also contesting the granting of the petition and has joined with intervener in asking for an affirmance of the commission's order.

By section 23 of article XII of the Constitution all public utilities are made subject to control and regulation by the Railroad Commission. This grant of power to the commission is reiterated in section 31 of the Public Utilities Act. (Stats. 1915, p. 115.) This jurisdiction, however, is not exclusive, and until the Railroad Commission has acted in reference to any public utility the superior court has jurisdiction in equity to enforce an obligation imposed by law upon such utility. But after the commission has assumed jurisdiction over a public utility for the purpose of administering the law applicable to the activities of the utility, the commission has exclusive jurisdiction over the regulation and control of said utility and may take any action necessary to the proper and complete exercise of this jurisdiction. In the exercise of this jurisdiction the commission may set aside any prior order or determination of the courts in matters coming under the exclusive jurisdiction of the commission. This decision of the Railroad Commission in matters affecting public utilities is final and conclusive except as the same is restricted by section 67 of the Public Utilities Act, which provides for a writ of review to this court in certain matters. These principles are enunciated and established by the decision of this court in the case of *Truck Owners etc., Inc.,* v. *Superior Court,* 194 Cal. 146 [228 Pac. 19, 24]. In uphold-

ing the power of the superior court in matters affecting public utilities where the commission has never exercised its jurisdiction over said utilities, this court said in the case just cited:

"Until it (the legislature) has further exercised its power to divest the superior court of its powers in matters affecting public utilities it must be concluded that such courts as courts of general jurisdiction are open to others as well as to those upon whom the right to resort thereto is specially conferred by the Public Utilities Act and that, therefore, the respondent court had jurisdiction to entertain and decide the pending action and to take the necessary steps to enforce its orders and judgment therein."

In support of the further proposition of law contained in our statement above, we quote the following from the cited case, page 155: "It is insisted by petitioners that unless the Railroad Commission has exclusive jurisdiction to determine the questions of fact involved in said injunction suit and to make its order accordingly, great confusion will arise, for the reason that the superior courts in the several counties may make widely divergent decisions touching the same or similar facts. It is particularly urged by counsel for the Railroad Commission, appearing as *amicus curiae,* that it is the peculiar and sole province of the commission to determine the fact as to whether or no any particular individual or company is operating 'between fixed termini and over a regular route' and is, therefore a 'transportation company'. And it is argued that if the superior court should find, as it has found in the pending case, that the petitioners are transportation companies, and suppose, say counsel, that later on the commission should assume jurisdiction in a proper proceeding before it and should determine that the said operations were not 'between fixed termini and over a regular route', and that still later an application should be made to the superior court to dissolve the injunction and the court should deny the motion, would not such denial be an interference 'with the Commission in the performance of its official duty'? In answer to the query it should be borne in mind that we are not here dealing with a situation where the Commission has acted. It may also be noted that the Commission undoubtedly has power to inquire into the methods and activities of the plaintiffs as well as the defendants in said action as to

their transportation operations, either on their own motion or on the complaint of petitioners. Likewise it may be noted that the functions of the Commission may be brought into play by an application by petitioners for a certificate of public convenience and necessity. If such certificate be granted the injunction in the pending cause would cease, for by its own terms it is enforceable against the petitioners only 'until they shall have obtained from the Railroad Commission of the State of California a certificate declaring that public convenience and necessity require such operation'. Furthermore, if the Commission shall assume jurisdiction in an investigation as to the activities of the petitioner and the injunction plaintiff, or both, and should determine under subdivision (3) section 1 of the Auto Stage and Truck Transportation Act that the petitioners were not operating 'between fixed termini and over a regular route' and, therefore, were not transportation companies as defined by that act, its finding would not be subject to review and it would then have the power under section 31 of the Public Utilities Act to make all necessary orders to enforce its decision in the matter.''

Applying the principles of law announced above, we conclude that the Superior Court of the County of Modoc had jurisdiction to render the judgment in the case brought by petitioners and others against the C. W. Clarke Co., in which it was adjudged that the company was a public utility and that the plaintiffs in said action were the beneficiaries in the use of the water devoted to public use by said utility. We further hold that said judgment was valid and binding upon the parties to said action until the Railroad Commission assumed jurisdiction of said utility for the purpose of regulating its operations, and upon its assumption of jurisdiction over the activities of said utility, any order or judgment of the superior court in conflict with the orders of the commission is to that extent ineffective and of no binding effect upon the parties thereto. This conclusion must necessarily follow from the provisions of the Constitution and the Public Utilities Act, and particularly from section 31 thereof, which provides that: ''The Railroad Commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in the state and to do all things, whether herein specifically designated or in addition thereto, which are neces-

sary or convenient to the exercise of such power and jurisdiction.''

The judgment of the Superior Court of Modoc County was not therefore *res judicata* as to any right of the plaintiffs as beneficiaries in the use of the water devoted to a public use by the defendants in said action as against the future consideration of said right by the commission. When the Railroad Commission assumed jurisdiction over said public utility, as it did at the time of the hearing of the application of the Clarke Company to increase the rates for water delivered to petitioners, which resulted in the order of September 17, 1934, its jurisdiction over the activities of said utility was exclusive and plenary, except by proceedings in review to this court, unhampered and unrestrained by the previous judgment of the Superior Court of the County of Modoc. In this order of September 17, 1934, the commission ordered that the diversion of water for stock purposes be discontinued during the nonirrigating season. Petitioners took no steps to have this order reviewed by this court, but instituted contempt proceedings to the Superior Court of the County of Modoc against the utility to have its officers punished for violating the injunctive provisions of said judgment. From a legal standpoint these proceedings were ineffective for any purpose, as the judgment had been superseded by the action of the commission in assuming jurisdiction over said utility and by its order that the diversion of water be discontinued for stock purposes.

Petitioners contend, however, that by the terms of said judgment their title to the quantity of water, both for irrigation purposes and for domestic purposes, was quieted as against the claims of the defendants in said action. If by this contention petitioners claim that by said judgment they were decreed a private right or estate to the waters in said canal, we think they are in error. ''No private estate can be created in property devoted to a public use, and a consumer of water cannot have a water right in the sense of a freehold interest in the real estate of the distributing company; that his right is simply a right of service.'' (*Glenn-Colusa Irr. Dist.* v. *Paulson,* 75 Cal. App. 57, 69 [242 Pac. 494]. See, also, *Leavitt* v. *Lassen Irr. Co.,* 157 Cal. 82 [106 Pac. 404, 29 L. R. A. (N. S.) 213]; *Coulter* v. *Sausalito Bay Water Co.,* 122 Cal. App. 480, 497 [10 Pac. (2d) 780]; *Hil-*

*dreth* v. *Montecito Creek Water Co.,* 139 Cal. 22, 29 [72 Pac. 395].)

There is a provision in the judgment that each and all of the rights of the plaintiff in said action in and to the waters of Ash Creek at the times and in the amounts as hereinbefore specified be quieted as against the defendants in said action. But the "rights" of the plaintiffs in the waters of Ash Creek were to receive the same for irrigation, domestic and stock purposes "for the price and sum of $1.00 per acre, or such other sum as may be provided by law". This right is simply a right of service, a right to be furnished with water by the utility upon payment of the price, and not a water right in the ordinary sense of "a private freehold interest in the real estate of the distributing company". (*Glenn-Colusa Irr. Dist.* v. *Paulson, supra.*) Such a right, as we have seen, is held by the beneficiary subject to the control and regulation thereof by the Railroad Commission. We have searched in vain in the judgment for any provision therein giving to the plaintiffs in said action a private right, as distinguished from a mere right of service, in the waters flowing in said canal. The terms of the judgment are clear that the Clarke Company is a public utility and that plaintiffs are entitled to be served with water by the utility upon payment of the rates fixed by law, and there is not any intimation therein that the plaintiffs in said action have any further or additional rights in said waters than this right of service.

Petitioner assails the order of the commission of date July 27, 1936, upon the ground that the commission did not regularly pursue its authority when it ordered the Clarke Company to discontinue the diversion to them of water for stock purposes and that the rates fixed for irrigation water were unreasonable, excessive and prohibitive. As to that part of the order directing the discontinuance of stock water, as we have already seen, the same direction was contained in the previous order of the commission under date of September 17, 1934. No attempt was made by petitioners to have this order reviewed by this court. It has therefore become final. The order as to this service subsequently made containing the same direction can have no effect upon the first order which has become final. If the later order were set aside the former and final order would still stand and govern the rights of the parties herein. A review of the later order

would therefore be productive of no result which would in any way affect said rights.

█ The contention that the Railroad Commission in its latest order fixing the rates to be charged petitioners for water for irrigating purposes did not regularly pursue its authority and therefore the order should be set aside on review is based upon two grounds, the first of which is the failure of the commission to include the 330 inches of water, formerly used by the Babcocks, in the total amount of water as a basis for fixing said rates. Petitioners contend, in the first place, that the Clarke Company was without authority to release the Babcocks from their obligation to receive their proportion of the waters of said canal, and thereby cast upon petitioners the entire burden of operating and maintaining said canal. As we view this question, it was not so much the right of the utility to release the Babcocks as it was the right of the Babcocks to discontinue the use of water from said canal. It is conceded that the Babcocks had acquired a private water right sufficient for their purpose, and declined to accept any further service by the utility. It is true this water had been dedicated to a public use, but we have been cited to no authority, and we have been unable to discover any through our own efforts, which holds that a water user, having no further use for the waters furnished by a public utility, can be forced either to receive his proportion of those waters or to pay for the same without using it. We admit that the withdrawal of the Babcocks as patrons of the utility produces a most serious situation, both for the utility and the remaining consumers, but we know of no legal action that can be taken by either the utility or the consumers or by the commission to force the Babcocks to continue to accept service from the public utility without their consent and after they have no use for that service. █ It is also claimed that the Clarke Company is using the water which formerly was used by the Babcocks in the irrigation of its own lands without paying any part of the cost of maintaining said canal. This claim is denied by the company. This was an issue properly before the commission. We have no authority to receive any evidence upon this or any other issue, but must hear the cause on the record of the commission as certified to us. (Sec. 67, Public Utilities Act.) No claim is made by petitioners that the implied finding of the com-

mission upon this issue adverse to petitioners is not supported by the record. We must therefore conclude that the commission regularly pursued its authority in excluding the so-called Babcock water from the total amount of water upon which it based its order of July 27, 1936, fixing the rates to be charged for water for irrigation purposes.

■ There remains yet to be considered the contention of petitioners that said order fixing the water rates at $7.50 per acre per annum is unreasonable, excessive and prohibitive. The evidence before the commission shows conclusively that the rates fixed by the commission by its order under review will not raise sufficient revenue to meet the cost of maintaining the canal from which the petitioners received water for the irrigation of their lands, without allowing the public utility any interest whatever upon its investment. In the case of *Contra Costa Water Co.* v. *Oakland,* 159 Cal. 323, 334 [113 Pac. 668, 674], the law upon this subject was declared as follows:

"It is now settled that what one engaged in furnishing water to the public is entitled to demand 'is a fair return upon the reasonable value of the property at the time it is being used for the public', over and above its necessary operating expenses, including current repairs and taxes. . . . " and "an annual allowance to provide for making good the depreciation which must occur in much of the property used in such a service."

This same principle is recognized in the following cases: *Spring Valley Water Works* v. *San Francisco,* 82 Cal. 286, 307 [22 Pac. 910, 1046, 16 Am. St. Rep. 116, 6 L. R. A. 756], *San Joaquin L. & P. Corp.* v. *Railroad Com.,* 175 Cal. 74, 77 [165 Pac. 16], *Lyon & Hoag* v. *Railroad Com.,* 183 Cal. 145, 146 [190 Pac. 795, 11 A. L. R. 249], and *Brooks-Scanlon Co.* v. *Railroad Com.,* 251 U. S. 396 [40 Sup. Ct. 183, 64 L. Ed. 323].

It cannot be said that rates which do not produce sufficient revenue to maintain the operating plant of a public utility are either unreasonable or excessive. It is true that in the order under review the commission stated that the testimony of the water users was unanimously to the effect that none of them could afford to pay a rate of more than $2.25 per acre, even with stock water furnished during the entire year without additional cost. We may assume that this recital in

the order of the testimony of the water users states their true condition, but does their inability to pay reasonable rates justify the fixing of rates which would be unjust to the public utility and insufficient to pay the cost of maintaining its operating plant? The authorities are all to the contrary and neither the courts nor the commission is authorized to fix or approve a rate which would confiscate the property of the utility. (*Spring Valley Water Works* v. *San Francisco, supra.*)

We regret the unfortunate situation in which the order of the Railroad Commission leaves the petitioners, but no legal method has been suggested either to the commission or to this court whereby they may be rescued from the dilemma in which they have been placed by an unfortunate set of circumstances occasioned by no act of their own or by any neglect of duty on the part of the intervener. The order of the commission must be and the same is therefore affirmed.

Shenk, J., Langdon, J., Edmonds, J., and Seawell, J., concurred.

Rehearing denied.