[Civ. No. 34892. Second Dist., Div. Four. May 18, 1970.]

VENTURA COUNTY WATERWORKS DISTRICT, NO. 12,
Plaintiff and Respondent, v.
SUSANA KNOLLS MUTUAL WATER COMPANY,
Defendant and Appellant.

674

COUNSEL

Frederick R. Schumacher and Chase Morgan for Defendant and Appellant.

Thompson, Lyders & McKaskle and K. D. Lyders for Plaintiff and Respondent.

OPINION

KINGSLEY, J. — Defendant, Susana Knolls Mutual Water Company (Susana Knolls), is selling water to two small mutual water companies—Alpine Mutual Water Company ("Alpine") and Belwood Mutual Water Company ("Belwood")—each of which serves the residents in a subdivision located in Ventura County. Plaintiff is a duly organized county waterworks district, authorized to provide water service in Ventura County. Plaintiff proposes to extend its service so as to provide water to Alpine and Belwood,

to the exclusion of defendant.[1] Fearing that, if it proceeded with that project, it might become subject to a liability to defendant under sections 1501 through 1506 of the Public Utilities Code,[2] it brought an action in declara-

[1] Insofar as the case at bench is concerned it is conceded that Alpine and Belwood are duly organized and validly operating mutual water companies. Each of them maintains its own "on-tract" distribution lines to serve the properties in the two sub-divisions involved. Each purchases water, in bulk, from Susana Knolls and diverts the water so purchased into its own on-tract distribution system. Plaintiff proposes to provide a comparable bulk sale to the two companies at their respective diversion gates.

[2] "§ 1501. The Legislature recognizes the substantial obligation undertaken by a privately owned public utility which is franchised under the Constitution or by a certificate of public convenience and necessity to provide water service in that the utility must provide facilities to meet the present and prospective needs of those in its service area who may request service. At the same time, the rates that may be charged for water service by a regulated utility are fixed by the Public Utilities Commission at levels which assume that the facilities so installed will remain used and useful in the operation of the utility for a period of time measured by the physical life of such facilities.

"The Legislature finds and declares that the potential loss of value of such facilities which may result from the construction and operation by a political subdivision of similar or duplicating facilities in the service area of such a private utility often deters such private utility from obtaining a certificate or extending its facilities to provide in many areas a water supply essential to the health and safety of the citizens thereof.

"The Legislature further finds and declares that it is necessary for the public health, safety, and welfare that privately owned public utilities regulated by the state be compensated for damages that they may suffer by reason of political subdivisions extending their facilities into the service areas of such privately owned public utilities."

"§ 1502. (a) As used in this chapter, 'political subdivision', means a county, city and county, city, municipal water district, county water district, irrigation district, public utility district, or any other public corporation.

"(b) As used in this chapter, 'service area' means an area served by a privately owned public utility in which the facilities have been dedicated to public use and in which territory the utility is required to render service to the public.

"(c) As used in this chapter, 'operating system' means an integrated water system for the supply of water to a service area of a privately owned public utility.

"(d) As used in this chapter, 'private utility' means a privately owned public utility providing a water service.

"(e) As used in this chapter, 'type of service' means, among other things, domestic, commercial, industrial, fire protection, wholesale, or irrigation service."

"§ 1503. The Legislature finds and declares that whenever a political subdivision constructs facilities to provide or extend water service, or provides or extends such service, to any service area of a private utility with the same type of service, such an act constitutes a taking of the property of the private utility for a public purpose to the extent that the private utility is injured by reason of any of its property employed in providing the water service being made inoperative, reduced in value or rendered useless to the private utility for the purpose of providing water service to the service area, and such taking shall be compensable under Section 14 of Article I of the Constitution of California."

"§ 1504. Just compensation for the property so taken for public purposes shall be as may be mutually agreed by the political subdivision and the private utility or as ascertained and fixed by a court of competent jurisdiction pursuant to the laws of

tory relief. The trial court entered a judgment in favor of plaintiff in the following terms:

"IT IS ADJUDGED as follows:

"1. Susana Knolls does not have the legal right to sell or deliver water to Alpine, Belwood, or any other person, firm, corporation, or entity.

"2. Susana Knolls would not be entitled to compensation pursuant to sections 1501 through 1506 of the California Public Utilities Code or article I, section 14 of the California Constitution, by reason of the construction by plaintiff district of facilities to provide water to any territory or customers served by or through the facilities of Susana Knolls.

"3. The foregoing determination that Susana Knolls would not be entitled to compensation shall apply so long as Susana Knolls has not become a valid mutual water company under California law or has not received a certificate of public convenience and necessity from the California Public Utilities Commission prior to the time that plaintiff district constructs facilities or provides or extends water service which would constitute a taking of the property of Susanna Knolls within the meaning of sections 1501 through 1506 of the Public Utilities Code.

"4. That plaintiff have judgment against defendant Susana Knolls declaring the foregoing, each party to bear its respective costs."

Defendant has appealed; we affirm the judgment.

---

this state relating to eminent domain, including consideration of the useful value to the political subdivision of the property so taken.

"Whenever the compensation by a political subdivision under this section is an amount equal to the just compensation value of all the property of the private utility in the operating system that the private utility employs in providing water service to the service area, the political subdivision may, by resolution, provide for the acquisition of all such property.

"A political subdivision engaged in activities set forth in Section 1503 shall pay just compensation for the property so taken for public purposes."

"§ 1505. The provisions of Sections 1503 and 1504 will be applicable to any private utility which constructs facilities to provide or extend water service or provides or extends such service to any territory theretofore served by a political subdivision with the same type of service.

"§ 1506. As used in this chapter, 'private utility' includes a mutual water company. In its application to mutual water companies, this chapter affects and relates only to the property, or portion of any property, of a mutual water company that is employed by the company in providing water service in or for a territory that is actually being provided with water service by the company when a political subdivision constructs facilities to provide or extend water service or provides or extends such service to the territory, and that territory shall constitute the 'service area' of a mutual water company as used in Section 1502."

Plaintiff's theory, accepted by the trial court, was as follows: (1) Susana Knolls was not, and is not, a validly operating mutual water company, since it is not exempt from regulation by the Public Utilities Commission under section 2705 of the Public Utilities Code[3] and does not have a certificate of public convenience and necessity from that commission; (2) only a water company holding such a certificate, or a mutual water company exempt from regulation under section 2705, is entitled to compensation under section 1501 et seq.

The trial court, as we have said, made findings to the effect that defendant was not operating in a manner such as to entitle it to exemption under section 2705[4] and drew conclusions of law in accordance with plaintiff's construction of section 1501 et seq. We hold that it was correct in so finding and concluding and that its judgment adverse to defendant should be affirmed.

On its appeal, defendant argues: (1) that the trial court had no jurisdiction to determine whether or not it was a "valid mutual water company" but that the exclusive jurisdiction to determine that issue lies in the Public Utilities Commission in a proceeding brought for that purpose under section 2707 of the Public Utilities Code; and (2) that, in any event, a mutual water company, actually providing water service, is entitled to compensation under section 1501 et seq. even though it may be acting illegally in providing such service. We reject both arguments.

---

[3]The findings on that issue are as follows:

"3. During the period that it has sold water to various customers, Susana Knolls has not been and is not now substantially customer-controlled, from the standpoint of business policies or operations, or otherwise.

"4. During the period that it has sold water to various customers, Susana Knolls has held itself out as being willing to sell water to all those within the area which could be served by its water system.

"5. During the period that it has sold water to various customers, Susana Knolls has sold substantial quantities of water to Southern California Water Company, a privately owned public utility regulated by the Public Utilities Commission. Such sales to Southern California Water Company were not in compliance with nor permitted by any of the provisions of section 2705 of the Public Utilities Code.

"6. During the period that it has sold water to various customers, Susana Knolls has not sold such water at cost.

"7. Susana Knolls has never been and is not now a valid mutual water company under California law."

[4]The findings are:

"1. Susana Knolls does not have the legal right to sell or deliver water to Alpine, Belwood, or any other person, firm, corporation, or entity.

"2. Susana Knolls would not be entitled to compensation pursuant to sections 1501 through 1506 of the California Public Utilities Code or article I, section 14 of the California Constitution, by reason of the construction by plaintiff district of facilities to provide water to any territory or customers served by or through the facilities of Susana Knolls."

## I

Since defendant expressly, and with some vigor, insists that it is not attacking the factual findings as to its status, but only the jurisdiction of the trial court to make any findings on that issue, we need not consider the lengthy history found in the record and in the briefs of the events leading up to the formation of defendant and its present system of operation.

## II

It is conceded that no proceeding under section 2707 has ever been instituted by anyone and that defendant's status as an exempt or a non-exempt mutual water company has never been decided by the Public Utilities Commission. The most that can be, or is, claimed is that, in proceedings concerning Alpine and Belwood, the commission had become aware of the fact that those companies purchased water from defendant and that, with such knowledge, the commission has taken no affirmative action against defendant. We do not regard that inconclusive fact as ousting the superior court of jurisdiction over the present law suit.

Clearly, under the state Constitution and statutory provisions, a superior court may not act in such a manner as to circumvent, or to impede, the commission in the exercise of its constitutional jurisdiction over public utilities. But, as the court said in *Vila* v. *Tahoe Southside Water Utility* (1965) 233 Cal.App.2d 469, 477 [43 Cal.Rptr. 654]: "It has never been the rule in California that the [public utilities] commission has *exclusive* jurisdiction over any and all matters having any reference to the regulation and supervision of public utilities." (Italics in original.)

We regard the case at bench as comparable to the situation before the Supreme Court in *Miller* v. *Railroad Commission* (1937) 9 Cal.2d 190 [70 P.2d 164, 112 A.L.R. 221]. In that case the court had for consideration the effect of an earlier judgment of the superior court, declaring a company to be a public utility and directing it to serve certain customers at rates fixed by the court. That judgment had been affirmed on appeal. (*Babcock* v. *C. W. Clarke Co.* (1931) 213 Cal. 389 [2 P.2d 155].) Thereafter the commission[5] had taken jurisdiction of proceedings concerning the rights litigated in the superior court action and had entered orders modifying the superior court judgment. In considering the relation between the superior court judgment and the subsequent commission orders, the court said: "By section 23 of article XII of the Constitution all public utilities are made subject to

---

[5]The change of the commission's name from "Railroad Commission" to "Public Utilities Commission" made no change in the issues herein involved.

control and regulation by the Railroad Commission. This grant of power to the commission is reiterated in section 31 of the Public Utilities Act. (Stats. 1915, p. 115.) This jurisdiction, however, is not exclusive, and until the Railroad Commission has acted in reference to any public utility the superior court has jurisdiction in equity to enforce an obligation imposed by law upon such utility. But after the commission has assumed jurisdiction over a public utility for the purpose of administering the law applicable to the activities of the utility, the commission has exclusive jurisdiction over the regulation and control of said utility and may take any action necessary to the proper and complete exercise of this jurisdiction. In the exercise of this jurisdiction the commission may set aside any prior order or determination of the courts in matters coming under the exclusive jurisdiction of the commission.

"          .          .          .          .          .          .          .          .          .          .          .          .          .          .          .          .          .

"Applying the principles of law announced above, we conclude that the Superior Court of the County of Modoc had jurisdiction to render the judgment in the case brought by petitioners and others against the C. W. Clarke Co., in which it was adjudged that the company was a public utility and that the plaintiffs in said action were the beneficiaries in the use of the water devoted to public use by said utility. We further hold that said judgment was valid and binding upon the parties to said action until the Railroad Commission assumed jurisdiction of said utility for the purpose of regulating its operations, and upon its assumption of jurisdiction over the activities of said utility, any order or judgment of the superior court in conflict with the orders of the commission is to that extent ineffective and of no binding effect upon the parties thereto." (*Miller* v. *Railroad Commission, supra* (1937) 9 Cal.2d 190, 195, 197.)

■ As the judgment entered by the trial court makes clear, the court here had acted in strict accord with the rule thus laid down. It had before it an action—declaratory relief—over which it had undoubted jurisdiction; decision of that action required a determination of defendant's status under section 2705 of the Public Utilities Code, just as decision in *Babcock* v. *Clarke* required a determination of the public utility status of the defendant there; the trial court, having no action by the commission to guide, or to control, its decision, necessarily made its own finding, expressly limiting the effect of that ruling to a period ending with the assumption of jurisdiction by the commission. In so doing, it acted properly.

### III

■ We cannot agree with defendant in its alternative contention—*i.e.,*

that it is entitled to compensation under section 1501 et seq., even if it is operating illegally. While it is true that those sections do not expressly refer to a "valid" mutual water company, it is unbelievable that the Legislature could have intended to allow a water company to set up in business, with total disregard for the laws regulating its right to operate, and then prevent a public agency from offering a legal service in the area involved except at the cost of compensating the private company for facilities illegally installed and illegally operated. In fact, the legislative declaration of purposes, found in section 1501, points squarely to the contrary. That section tells us that, "The Legislature recognizes the substantial obligation undertaken by a privately owned public utility *which is franchised under the Constitution or by a certificate of public convenience and necessity* to provide water service in that the utility must provide facilities to meet the present and prospective needs of those in its service area who may request service."

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.